190 So.2d 354 (1966)
CITY OF MIAMI BEACH, a Municipal Corporation, Created and Existing under the Laws of the State of Florida, Appellant,
v.
BREIT BAY, INC., a Florida Corporation, Appellee.
No. 65-1017.
District Court of Appeal of Florida. Third District.
September 20, 1966.
Rehearing Denied October 18, 1966.
Joseph A. Wanick, City Atty., for appellant.
Edgar Lewis, Miami, for appellee.
Before PEARSON, CARROLL and SWANN, JJ.
SWANN, Judge.
This appeal by the City of Miami Beach, Florida seeks reversal of a final decree which enjoins the City from restricting the use of the appellee's property for single-family purposes.
The property involved in this litigation was formerly waterfront residential property on the Miami Beach side of Biscayne Bay, just north of 41st Street, and had been purchased many years prior to the construction of the Julia Tuttle Causeway. Under a zoning ordinance enacted by the City of Miami Beach, Florida in 1930, the property was zoned "RC," which is classified as an Estate District of the City of Miami Beach. At that time, the section consisted of luxurious waterfront homes located in one of the most desirable residential sections of the City.
The proper public authorities decided it was necessary to construct an additional causeway leading from Miami to Miami Beach, terminating at 36th Street in the City of Miami and at 41st Street and Alton Road on Miami Beach.
The construction and location of the Miami Beach terminus of the causeway led to *355 the eradication of the waterfront residential area in which the appellee's property is located. All of the surrounding homes were removed, the waterfront was filled in and access roads to the causeway were placed around the appellee's property.
There had been fourteen homes in Block 1, of Nautilus Subdivision, zoned in the RC Estate District. After construction of the causeway, appellee's property was the only one remaining which was zoned as RC in that subdivision. The testimony disclosed that there were no other residences left in the entire Block 1.
The appellee's property is "an island surrounded by roads." Directly to the west is the maze of highways that make up the cloverleaf, the terminus of the Julia Tuttle Expressway. Also to the west is the Mount Sinai Hospital property. To the south, in the same block, is an eight-story Howard Johnson Hotel or Motel and Restaurant. Also immediately south of this property is a raw concrete blockhouse that is a power station for the power company.
To the east, on the other side of North Bay Road, are single-family residences which are located in another zoning classification. Southwest of the property is the west bound entrance approach for the Julia Tuttle Causeway.
The chancellor found that there had been substantial changes in the character of the neighborhood and the type and character of activities in the area in which this property is located. The chancellor also determined that such zoning is not now in keeping with, but is contrary to the most appropriate use of the land in this case, and that the continued enforcement of the present zoning is arbitrary, unreasonable, unconstitutional and void. The chancellor also found that the land is no longer suitable or useful for single-family purposes, and that the unreasonableness and unconstitutionality of the present zoning of appellee's property is not fairly debatable under the evidence before the court. On appeal, the City challenges these findings.
The case herein involves a similar situation to that referred to in the case of City of Miami Beach v. Miller, Fla.App. 1962, 140 So.2d 317, in which the court found that the evidence before the trial court was sufficient to substantiate the findings and order of the trial court. The same holding is applicable herein.
The City contends that the appellee has failed to exhaust its administrative remedies and claims that although appellee had applied for and was denied a zoning change by the City Council of Miami Beach under Section 21 of the ordinance, it was required, under Section 22, to appeal to the City Board of Adjustment for this change of zoning.
An examination of Sections 21 and 22 of the zoning ordinance discloses that Section 21 pertains to district boundary changes and gives the City Council the sole and exclusive authority to amend, supplement, change, modify or repeal the regulations and boundaries therein established. There is no requirement in Section 21 that a person must also appear before a Board of Adjustment.
Section 22 of the ordinance establishes a Board of Adjustment which is an administrative body appointed by the City Council. Its purpose is varying or modifying regulations relating to the use, construction or alteration of buildings or structures, or the use of land, so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done. This Board also has the jurisdiction of hearing appeals from administrative offices in the City.
The Board of Adjustment has no authority to effectuate a change of zoning. Where the Board is not vested with such power, how can it logically be said that a failure to appear before the Board constitutes a failure to exhaust administrative remedies? The law does not require the doing of a useless act.
*356 In Josephson v. Autrey, Fla. 1957, 96 So.2d 784, the court, in referring to Boards of Adjustment, said:
* * * * * *
"* * * Boards of adjustment or zoning boards of appeals are customarily provided for by the ordinances to examine into situations where strict adherence to the letter of the ordinance would produce a unique or special hardship on the particular property owner. * * * Historically, these appeals boards may grant relief in connection with such problems as setback lines, area and height restrictions, sidelot lines and the like when not contrary to the public interest. To endow such a board with the authority to amend the zoning ordinance in particular instances by authorizing a use of property prohibited by the ordinance itself would be to convey to the appeals board the authority to enact legislation, nullify the decision of the municipal legislative body, and in effect destroy the beneficent results to be obtained by comprehensive zoning. * * *"
* * * * * *
"* * * However, when the appeals board undertakes to `rezone' under the guise of granting a `variance' then it is attempting to legislate."
* * * * * *
See also Mayflower Property, Inc. v. City of Fort Lauderdale, Fla.App. 1962, 137 So.2d 849.
We have examined the City's contention concerning the assessment of costs against it by the chancellor, and do not find that the City has shown this action of the chancellor to be clearly erroneous. See Section 58.04, Florida Statutes, F.S.A., and Dade County v. Brigham, Fla. 1950, 47 So.2d 602, 18 A.L.R.2d 1221.
The final decree is therefore
Affirmed.