208 So.2d 268 (1968)
CITY OF ST. PETERSBURG, Florida, a Municipal Corporation, Appellant,
v.
Dean AIKIN and Martha Aikin, His Wife, and William F. Galvin and Kathleen Galvin, His Wife, Appellees.
No. 67-152.
District Court of Appeal of Florida. Second District.
March 22, 1968.
*269 B. Edwin Johnson, Asst. City Atty., St. Petersburg, for appellant.
Adrian S. Bacon, of Bacon & Hanley, St. Petersburg, for appellees.
PIERCE, Judge.
This is an appeal from a final decree entered in favor of appellees named above, plaintiffs in the Court below, in a suit for declaratory judgment filed by them against the City of St. Petersburg, Florida, a municipal corporation, defendant below.
Plaintiffs filed their suit in Pinellas County Circuit Court against the City for a declaratory decree adjudging zoning ordinances numbered 184-Z and 227-Z, previously enacted by the City invalid as it applied to certain described property owned by plaintiffs.
Plaintiffs filed their complaint in the Pinellas County Circuit Court on April 25, 1966, alleging their ownership of the property involved, constituting an entire block of land in the City of St. Petersburg, bounded on the north and south by 22nd Avenue and 21st Avenue respectively, and on the east and west by 57th Street and 58th Street respectively; that prior to April 6, 1965, the tract was zoned R-5 which permitted use for multi-family and office building purposes; that on that date plaintiffs applied to the City for rezoning of the property to C-LD, meaning Commercial Low Density which permitted the use of the property for erection of a gasoline filling station and a neighborhood food store, which said application was in due course denied; but that as applied to said property and its then current surroundings the R-5 zoning was unreasonable, arbitrary and unconstitutional.
The City filed an answer to the complaint, admitting the record facts aforesaid, but averring that Ordinance 75-E of the City prohibited the erection of a gasoline filling station within 300 feet of a church, park or playground. The City also moved to strike certain portions of the complaint, which motion the Court denied.
Final hearing on the issues was had on November 7th and 8th, 1966, at the conclusion whereof the Court made its findings of fact, which, after briefs and argument were incorporated as Findings of Fact in his final order entered on February 14, 1967, which is the order here appealed. The Findings of the able Judge are clearly stated and are amply supported by competent, substantial evidence, and we adopt such Findings as a part of this opinion as follows:
"Plaintiffs are the owners of all the lots shown on the Plat of Block 1, Diston plat of Glenwood Subdivision, situated in the City of St. Petersburg, Florida. The lots were acquired in piecemeal fashion by the plaintiffs over a period commencing in 1954 and ending in 1964. The property, in 1961, was zoned by the City to permit only single family residences but thereafter was rezoned to an R-5 classification which permits multiple residential dwellings, apartment buildings, office buildings, churches, public parks, playgrounds, and similar uses. R-5 is the present zoning classification. Plaintiffs have contracted to sell all of Block 1 aforesaid, subject to having it rezoned to a C-LD classification which permits limited commercial uses of property, and in an effort to change the *270 zoning from R-5 to C-LD, in accord with the zoning laws of the City of St. Petersburg, petitioned the City Zoning Board to rezone the property. The requested change in zoning was denied by the Zoning Board and this denial was affirmed by the City Council of the City of St. Petersburg. Thereupon plaintiffs filed this suit which came on for final hearing in due course. When the case was called for hearing on the merits plaintiffs shouldered the burden of moving forward with the proof, but only after directing to the attention of the Court the recent pronouncements found in Burritt vs. Harris [Fla.], 172 So. (2nd) 820, and Lawley vs. Town of Golfview [Fla. App.], 174 So. (2nd) 767. These cases indicate there has been an about-face in Florida on the rule of who has to sustain the validity of a zoning ordinance. Formerly the rule was that the burden was cast upon the property owner to disprove the need and validity of the zoning classification on his land and a clear expression of this rule is found in Bessemer Properties, Inc. v. Miami Shores Village [Fla.App.], 110 So. (2nd) 87; however, under Burritt vs. Harris and Lawley vs. Town of Golfview, supra, the shoe is on the other foot and the obligation is upon the zoning authority to prove the reasonableness and necessity of a zoning classification when these classifications are assaulted in the courts.
The evidence shows that plaintiffs' property is presently undeveloped and in a wild state consisting in part of boggy wet lands; that when originally platted the lands were situated in an agricultural area which has over the years changed its character to residential. The block of land lies at the intersection of 22nd Avenue and 58th Street North in St. Petersburg. Both of these streets have within fairly recent times become major arterial streets and at their intersection where plaintiffs' property is located some thirty-eight thousand units of vehicular traffic pass every twenty-four hours, the coming and going of which is regulated by traffic controls. 22nd Avenue for a great distance in both directions from plaintiffs' property is a four-laned highway, or street. Located in the areas near to plaintiffs' property is a large tract of city owned land, a portion of which is devoted to a youth center and playground. On one of the corners of the intersection is a combination real estate office and home occupied by Mr. Norman T. Branagan, who it is to be noted testified for plaintiffs that the change of zoning sought by plaintiffs would be helpful to the neighborhood and would not in his opinion injure any other person in their property rights. Immediately to the north of Mr. Branagan's property is a residential area; elsewhere in the immediate vicinity is the Palm Christian Church and the Northwest Elementary School.
Plaintiffs seek the change in zoning in order that a gasoline filling station and a Little General Store might be constructed thereon and plaintiffs have entered into a contract for the sale of this property for these purposes subject to the rezoning prayed for. The filling station would be constructed by the Shell Oil Company and is architecturally described as being a ranch style modern construction; the Little General Store is a type of neighborhood convenience store catering to neighborhood shoppers.
The Court has already determined and found that in its present zoning classification plaintiffs' land has a value ranging between forty thousand and fifty-eight thousand dollars; that if rezoned to C-LD, as sought by plaintiffs, it would have a value of not less than ninety thousand nor more than one hundred thousand dollars. Plaintiffs contend that the present zoning classification is unreasonable, arbitrary, and amounts to confiscation of plaintiffs' property and denies plaintiffs due process of law.
Plaintiffs submitted for consideration by the Court voluminous evidence in the way of documentary proof as well as a distinguished array of real estate experts and city planners. The testimony of the latter led *271 to the conclusion that the erection of the proposed gasoline filling station and Little General Store would not be unreasonable, would not constitute a threat to the public health or the public welfare, and would not result in a degrading of the neighborhood, but in all respects would be appropriate to and in keeping with the changing character of the area. Plaintiffs additionally adduced testimony that the proposed construction would not constitute a fire or other dangerous hazard. The City as zoning authority countered with witnesses and evidence to show that the City has adopted a comprehensive zoning and master street plan for the city and that plaintiffs' property was zoned as a part of and pursuant to the master plan. The City further attempted to show that the gasoline filling station would constitute a fire hazard and would cause to be dumped into the city sewage system servicing the area an extraordinary amount of waste; further, that the proposed use of plaintiffs' property would interfere with the existing traffic patterns in and about the intersection of 22nd Avenue and 58th Street North. The only other ground asserted by the City as a justification for the present zoning of plaintiffs' property was that the proposed filling station and Little General Store would make it more dangerous to the school children who travel up and down the aforementioned streets while going to and from the elementary school in the neighborhood. The City's witnesses further testified that under the existing R-5 zoning plaintiffs could construct on their property one hundred and eight apartment units for residential use. From the evidence in support of and in opposition to the City's contention that the proposed construction would create a fire hazard, the Court finds that under present regulations and techniques utilized by oil and gasoline companies a filling station is no more a fire hazard than would be found in any other type of use of the property, and the Court might note that there are more fires reported in residential establishments than in modern-day filling stations, even conceding there are more residential dwellings. With respect to the purported traffic hazard to the children attending school, it is to be assumed that if one hundred and eight family apartments were placed on the property, a goodly percentage of the inhabitants thereof would be elderly and infirm and another percentage would probably be children living there with their parents, and the Court is satisfied that if a large number of persons suffering from non-age or old age were required to live at this intersection with this high volume of traffic, a greater danger would exist than would exist from use of the property as a neighborhood shopping center and filling station. Likewise the Court is persuaded that one hundred and eight families would place a greater burden on the sewer and utility systems serving the area than would one two-bay gasoline filling station. It is to be conceded that the flow of traffic in and around the intersection might be affected to some degree by the proposed change in zoning, but even greater changes would result from having the property occuppied (sic) by a large apartment development which is possible under the present zoning.
The Court finds and determines as a matter of fact that the construction of a Little General Store and gasoline filling station on plaintiffs' property does not constitute a threat to the public welfare or the public health, is not a fire or other dangerous hazard to lives or surrounding property, that it would not result in creating a traffic problem, and neither would it unduly burden the sewer system or other public utilities serving the area. In summary, the plaintiffs' desired use of the land would not be an unreasonable use for the same.
This in itself, standing alone, is not sufficient, however, to justify the interposition of the courts to nullify an otherwise valid zoning ordinance, it being fundamental that zoning laws will withstand an attack upon them if enacted in the proper exercise of police power and where they bear a substantial *272 relation to public health, safety, morals and general welfare they are justifiable and legally valid. [City of] Miami vs. Rosen [151 Fla. 677], 10 So. (2nd) 307. The principle is now somewhat eroded, but prior to Burritt vs. Harris and Lawley vs. Town of Golfview it was the general rule that if zoning regulations might arguably be found to promote the public health, safety, morals and general welfare, then they must be sustained and were not subject to overthrow through judicial fiat. [City of] Miami Beach vs. Lachman [Fla.], 71 So. (2nd) 148.
The Court having determined that plaintiffs' proposed use of the property is reasonable and not inimical to the public welfare, let the coin be reversed to determine if there is a need for the zoning which the City now defends, demonstrating that an R-5 classification is necessary to promote or preserve the public health, safety, morals, etc.
The Court is bound by the pronouncements of the Supreme Court found in Burritt vs. Harris and Lawley vs. Town of Golfview, supra, which are explicit in holding that a property owner will not be restricted in the use of his property unless it be clearly shown that there is a real and substantial need of restrictions on the use of the property in order to protect the public health, safety, morals and general welfare. These cases further hold that to the extent that a zoning restriction exceeds the plainly defined bounds of public necessity as mentioned above, the zoning restrictions come to nothing and must be stricken as an abuse of the police power when attacked by proper suit. It is not inferred, however, that these cases hold contrary to the long established principle that the individual land owner's right to the unfettered use of his lands must yield to the public good if necessary to protect the public health, safety, morals etc. [City of] Miami Beach vs. Wiesen [Fla.], 86 So. (2nd) 442. It is abundantly clear, however, that now the burden of sustaining the need for restrictions is upon the zoning authority and not vice versa.
The zoning ordinance comes to this Court with a presumption of validity  City of Miami Beach vs. Hogan [Fla., 63 So.2d 493], 62 So. (2nd) 492  but read the record as we will we find no real or substantial requirements that the public welfare demands that plaintiffs' property be restricted to the uses permitted under an R-5 zoning classification.
There has been no showing by the zoning authority that any other property in the area would be detrimented or that the rights of others infringed upon by allowing plaintiffs' use of their property in accordance with a C-LD zoning; neither is there any showing of injury to the public health, safety, morals or welfare. It may be arguable that the master zoning plan of the City will be disrupted to some slight degree by permitting plaintiffs to use their land as prayed for. The answer to this, however, is that the same master street plan which the City now seeks to protect as a part of its comprehensive zoning plan has created the change in the character of the area by funnelling through it over the improved streets an enormous flow of traffic. It is this change which has prompted plaintiffs' demand for a change in the use of their property. This Court might note, parenthetically, that planning and zoning is a dynamic and ever changing function, and that while a fixed and long range program is indispensable to good zoning and planning practices, a rigid and unyielding adherence to this plan is as well calculated to stultify progress as it is to promoting it. A zoning plan ought to be like a well tailored jacket, sufficient to protect the user thereof but without restricting the wearer to the point that achievement of objective is made impossible. In the latter case it becomes a legislative straight-jacket restricting growth and activity.
The City, in assaulting plaintiffs' requested change of zoning, singled out as its primary and most important target the *273 proposition that the construction on plaintiffs' property of a Little General Store and a gasoline filling station will result in `judicial erosion of the master plan and would, like a "cancer", enervate the master zoning plan'. This Court is not unaware of the evils of spot zoning, but the arguments against it come to naught in the face of the constitutional right to own, control and use property, if the use sought is consistent and compatible with the health, safety, morals, and welfare of the general public. Burritt vs. Harris, supra. See also, 8 McQuillin, Municipal Corporations (1965 revised volume) 104, Sec. 25.43:
`Reasonableness is the proper measure in balancing public and private interests to determine the validity of zoning regulations or laws. Restrictions within reasonable limits upon the use of property for the common good have been consistently recognized as valid, although when the regulation goes beyond reasonable limits, it will be deemed unlawful.'
The integrity of a zoning plan will not per se justify the limitations on the highest and best use of property unless the plan itself is a reservoir of the public health, safety, morals and welfare. Such has not been shown in the present case.
It is to be concluded after weighing all of the facts, testimony, and evidence before the Court that plaintiffs by substantial believable evidence have demonstrated that the use of their property as a situs for a gasoline filling station and Little General Store is a reasonable and safe use. The City, on the other hand, has failed to demonstrate that the existing zoning of R-5 is debatably necessary or indispensable for the protection of the public interest.
It is not the function of this Court, or any other court, to rezone property. This function has wisely been left by law in the hands of the legislative branch of government, in the case at Bar the City Council of the City of St. Petersburg. This Court ought not to be, nor is it concerned with the wisdom or lack of wisdom of zoning practices where they can otherwise be justified, and we are here only presuming to point out that as applied to plaintiffs' property the present zoning classification thereof amounts to an an (sic) abuse of police power when it deprives plaintiffs of the right to place thereon the proposed gasoline filling station and neighborhood store. 8 McQuillin, Municipal Corporations (1965 revised volume) 121, Sec. 25.46.
The Court has not overlooked the contention of the City that its Ordinance No. 75-E may have application to the problem with which we are here concerned. This ordinance undertakes to prohibit the location of certain commercial installations, including gasoline filling stations, within 300 feet of churches, parks, playgrounds, etc. The Court is satisfied, and so finds from the evidence, however, that plaintiffs' property is not situated within 300 feet of any of the installations sought to be protected by the ordinance. It is to be noted, to avoid any misapprehension that the Court may have overlooked this fact, that there is city owned property within the 300 feet limitation of the ordinance, but this property is not being utilized as a park or playground."
The decretal part of the order then follows, declaring said zoning ordinances numbered 184-Z and 227-Z, to "constitute an arbitrary, unreasonable, and unconstitutional restriction" on the property involved and ordering and directing the City "to permit and allow plaintiffs, their successors, assigns or grantees in title, to construct on [said] lands a gasoline filling station and a neighborhood convenience shopping outlet of a type and nature substantially in accord with those shown on the plans and sketches introduced in this cause by plaintiffs".
We adopt the foregoing Findings of Fact and the final order and approve the same. We might mention that several other late cases, some just before and some after, the foregoing opinion and decree was entered by the Chancellor in the case sub judice, *274 have been decided by the 1st and 3rd District Courts of Appeal. The cases of City of Miami Beach v. Breit Bay, Inc., a Florida corporation, Fla.App. 1966, 190 So.2d 354, and Metropolitan Dade County v. Jennings Const. Co., Fla.App. 1967, 196 So.2d 33, are consonant with the Chancellor's opinion here. The cases of Metropolitan Dade County v. Kanter, Fla.App. 1967, 200 So.2d 624, and John G. Lane Line, Inc. v. City of Jacksonville, Fla.App. 1967, 196 So.2d 16, indicate a variance.
But we prefer the rationale of Judge Driver's opinion aforesaid, and therefore affirm the final order here appealed. It follows that said final order should be and is hereby affirmed.
Affirmed.
LILES, C.J., and ALLEN, J., concur.