## MARTIN BROTHERS, Inc., et al v. CITY OF SOUTH MIAMI.
### No. 66-C-1321.

Circuit Court, Dade County.

August 1, 1968.

John Kirk McDonald, Coral Gables, for plaintiffs.

Frank J. Kelly, City Attorney, for the defendant.

HAL P. DEKLE, Circuit Judge.

*Final judgment:* A complaint seeking equitable relief was duly filed in this court on the 4th day of February, 1966. It is alleged and the court so finds that the plaintiff herein, estate of Victoria Fascell, deceased, owns certain unimproved property consisting of approximately 2.3 acres in the city of South Miami, and that the co-executors have entered into an option agreement with the plaintiff, Martin Brothers, Inc., a Florida corporation, to sell the property, subject to the same being rezoned for apartment use. The plaintiffs filed an application with the city of South Miami to re-zone the property from its then zoning classification of RU-1A to the zoning classification of RU-5 which would permit construction of garden type apartments on the property. In accordance with the rules and regulations of the municipality, the application was presented to the planning and zoning board, a duly constituted board of said municipality, for its recommendation. The planning and zoning board recommended to the city commission that the application be denied and thereafter on December 7, 1965, the city commission passed and adopted resolution no. 2153, denying the application of the plaintiffs and setting forth that it was the finding of the city commission that the existing zoning of RU-1A is "a reasonable, equitable and proper zoning of the lands and is in conformity with the overall zoning of the city."

The plaintiffs, estate of Victoria Fascell and Martin Brothers, Inc., having exhausted all of their administrative remedies, filed this action against the city of South Miami seeking to have the court enter an order that the city's action was arbitrary, confiscatory and unreasonable, that said action had no reasonable relationship to the public health, safety, morals or welfare of the community, and further, that said action was unconstitutional in that it deprived the owner of the beneficial use of property without due process of law.

This cause first proceeded to trial on November 17, 1967; however, the case could not be concluded on that date and was continued to a later time. Thereafter, the defendant, city of South Miami, after posting a notice on the subject property, re-zoned the easterly portion of the subject property, together with other property adjacent to and immediately to the north of the subject propery, to a zoning classification of RU-5A which the city had just recently enacted and which restricted the use of the re-zoned portion of the subject property to semi-professional business use. This cause was heard on January 19, 1968, however, again the testimony was not concluded and this cause was then continued until the final hearing on June 25, 1968.

### Findings of fact

From the evidence, the testimony and exhibits, the court finds that —

The plaintiffs have exhausted their administrative remedies prior to instituting these proceedings and that the court has jurisdiction of the subject matter hereof and of the parties herein.

The property is located on the west side of S. W. 57th Avenue, also known as Red Road, approximately 6 blocks south of Sunset Drive (S. W. 72nd Street), and approximately 350 feet north of S. W. 80th Street, and legally described as follows —

East one-half of North one-half of S. E. $\frac{1}{4}$, S. E. $\frac{1}{4}$, N. E. $\frac{1}{4}$, less the West 25 feet thereof, in Section 36, Plat Book 54, Page 40, consisting of approximately 2.3 acres more or less.

The property faces 337.74 feet on S. W. 57th Avenue, or Red Road, which was well established by testimony as a heavily trafficked primary arterial of Southwest Dade County. Immediately across Red Road is an extensive apartment complex several blocks in length and breadth, facing the property, and immediately to the south of the property is a day kindergarten school which has been established in the city for many years. The western boundary of the property abuts the secondary street of S. W. 57th Court.

The testimony reflects that the owner of the property has owned the entire tract for in excess of 15 years and that although the same has been available for sale, there have been no offers to purchase except conditioned upon a re-zoning of the entire parcel.

The property has remained vacant during all of this time and it appears that it will remain vacant under the present zoning classifications as the evidence shows that there has been no prospective purchaser under the former RU-1A restriction or under the present hybrid RU-1A - RU-5A classification. Further, during these many years, the owner has had the burden of paying the ad valorem taxes plus assessments imposed by the defendant city for clearing and maintaining the property.

The defendant city initiated its own petition to re-zone the easterly portion of the subject property for apartment use during the pendency of this cause in August, 1967, but after a public hearing on the matter, the city denied its own application.

Thereafter, during the course of the hearings in this matter, the city re-zoned the easterly portion of the property to a newly enacted RU-5A classification allowing for a semi-professional business use.

This partial re-zoning of the property so emasculates this single unit of land, that it deprives the owner of the reasonably beneficial use of the property for which it would be reasonably suited as a whole, and constitutes an unreasonable restriction of the use thereof, and an arbitrary action — which was admittedly a belated placating expediency on the eve of an election in the city of South Miami.

The overwhelming weight of all of the testimony, including the witnesses for the defendant, clearly shows that the zoning classification sought by the plaintiff of RU-5 for garden type apartments would have no adverse affect upon the public health, welfare, morals or safety of the community as a whole.

It is further clear from the testimony of the numerous witnesses and the many exhibits that the limited size of the property does not make a division of the property feasible, and that it is not suited for residential purposes or for office use. The primary arterial adjacent to the property, the surrounding area and its location make it unfit, unusable and unsaleable for any such purpose.

It appears that the defendant city contradicted its own resolution no. 2153 wherein the city commission stated that the existing RU-1A is "a reasonable, equitable and proper zoning of the lands, and is in conformity with the overall zoning of the city", when the city on its own motion attempted to re-zone the property for apartment use. Denying their own application the city then, as testified by the mayor of the city as a "political move", re-zoned a portion of the property to a RU-5A classification which restricted it to semi-professional office use.

While the RU-5 zoning classification sought by the plaintiffs would allow garden type apartment dwellings which are multiple in nature, it requires such buildings to be residential in exterior appearance. Such residences are entirely consistent with the general residential character of the neighborhood and of this community in general. In the modern city, we no longer live entirely in conventional single-family type residential houses. Modern design has permitted multi-family structures which are well blended into the same area and are consistent with the surrounding homes in our best residential communities, and in no way adversely affect or are detrimental to the health, safety, welfare or morals of the community.

The plaintiffs in this action have testified under oath that they would develop the subject property without any egress and ingress in and to the property from and to S. W. 57th Court. Further,

the court is aware that a provision of the RU-5 zoning classification is that a pre-cast concrete louvered wall 5 feet in height shall be erected along the rear property line or where the rear property line abuts a secondary road, said wall shall be set in 10 feet from the official right-of-way of the secondary road and that said 10 foot strip shall be landscaped. In the instant case, the wire fence on the rear of the subject property is on the westerly property line of the property and abuts a secondary road, therefore the louvered wall referred to above would be erected 10 feet easterly of the wire fence thereby allowing the retention of the trees within the aforesaid 10 foot strip and the wire fence would ensure the present aesthetic effect of the neighborhood.

There is substantial evidence, in fact, the great weight of the evidence leads unerringly to the conclusion that the zoning classifications imposed on the property are invalid, void, arbitrary, unreasonable, confiscatory and are based on no relation to public health, morals or general welfare, and are unconstitutional as applied to this property.

### Conclusions of law

The courts are inherently reluctant to substitute their judgment for the judgment of a legislative body. This is in keeping with our desire to separate the legislative and judicial branches of our government — however, the law of zoning is no stranger to our courts and certain guide lines have been established for the courts to follow. One test established by our Florida courts is that if the validity of a zoning regulation is "fairly debatable", then the court should not substitute its judgment for that of the zoning body. City of Miami Beach v. Lachman, 71 So.2d 148 (Fla. 1953). A basic criterion recognized by the Florida courts under which a zoning regulation will be found "not fairly debatable", and therefore one which should be considered by the judiciary, is where a zoning restriction has no substantial relationship to the public health, safety, morals or general welfare of the community.

It is well settled now that the burden of substantiating a restriction upon the use an owner may make of his land is placed squarely on the shoulders of the zoning authority, as was decided in Burritt v. Harris, 172 So.2d 820 (Fla. 1965), when the Supreme Court held —

"The constitutional right of the owner of property to make legitimate use of his land may not be curtailed by unreasonable restrictions under the guise of police power. The owner will not be required to sacrifice his rights absent a substantial need for restrictions in the interest of public health, morals, safety

or welfare. If the zoning restrictions exceed the grounds of necessity for the public welfare . . . they must be stricken as an unconstitutional invasion of property rights."

There seems to be no question on this point, as was determined in Lawley v. Town of Golfview, 175 So.2d 767 (Fla. App. 1965), when the court in commenting on the Burritt case held —

"By this holding the Supreme Court has created an innovation in the zoning laws of Florida by casting on the zoning authority the burden of establishing by a preponderance of evidence that the zoning restrictions under attack 'bear substantially on the public health, morals, safety or welfare of the community' if the ordinance is to be sustained."

This rule was again affirmed in Fogg v. City of South Miami, 183 So.2d 219 (Fla. App. 1966), Town of Palm Beach v. Leach, 185 So.2d 743 (Fla. App. 1966), and in City of St. Petersburg v. Aikin, 208 So.2d 268 (Fla. App. 1968).

In the instant case it is not necessary for this court to decide whether the defendant city has sustained its burden, for the plaintiffs have clearly shown that the zoning restrictions imposed on the property exceed the bounds of necessity for the public health, welfare, safety or morals, and that the zoning is not fairly debatable but rather arbitrary, unreasonable, discriminatory and confiscatory.

Further, the change of zoning restriction hurriedly placed on the subject property by the defendant city cannot be justified in the interest of public health, safety, morals or general welfare, and was in fact plainly shown to be an attempt by the city "to head off at the pass" the clear change to which the plaintiffs are entitled.

Furthermore, the testimony in the present case reflects that the defendant city has not only authorized the construction of high-rise apartments directly adjoining and across from single-family residences in close proximity to the subject property, but has also previously allowed property owners a few blocks north of the tract to extend their non-residential use from S. W. 57th Avenue to S. W. 57th Court. Also, the city has for many years allowed the property immediately to the south of the subject property to be used for a purpose other than single-family residential use. Therefore, as was determined in the recent case of Kugel v. City of Miami Beach, 206 So.2d 282 (Fla. App. 1968), a change in the plaintiff's property will in no way act to destroy the integrity of the neighborhood because the character of the property has already been changed by other actions of the municipality.

Therefore, under the authority as outlined in Metropolitan Dade County v. Jennings Construction Company, 196 So.2d 33 (Fla. App. 1967), and in accordance with the laws established in this state, it is ordered and adjudged that —

(1) The present zoning restrictions imposed on the subject property have no reasonable relationship to the public health, welfare, morals or safety of the community, and are too restrictive, invalid, void, arbitrary, confiscatory and unconstitutional as applied to the property.

(2) The defendant, city of South Miami, shall rezone the property within 30 days of the date of this judgment to an RU-5 zoning classification to allow the garden type apartment use of the property as requested by the plaintiffs in the original application filed with the defendant city and as the said zoning classification existed in the zoning code of the city of South Miami at the commencement of this action.

(3) The defendant, city of South Miami, is hereby enjoined from prohibiting the plaintiffs, their heirs, and/or assigns in developing the subject property in accordance with the RU-5 zoning classification originally requested by the plaintiffs and as set forth in paragraph (2) above.

(4) The plaintiffs are specifically ordered to construct a precast concrete louvered wall five feet in height as set forth in the RU-5 zoning classification, ten feet easterly from the existing wire fence which is situated along the right-of-way of S. W. 57th Court, and to retain the said fence and the trees lying and being ten feet east thereof and, further, to erect a similar wall on a ten foot set back on the southerly portion of said property along the westerly 110 feet and retain the trees within said ten foot set back and, further, the plaintiffs are enjoined from allowing any egress and/or ingress from or to the subject property from and to S. W. 57th Court, all of which will allow this portion of the property to remain in its present general appearance of trees and vine covered fence to insure the present aesthetic effect of privacy to the residents of S. W. 57th Court and to the adjoining southerly residence dwelling.

(5) The costs of this action be and they are hereby taxed against the defendant in an amount to be determined by this court upon petition therefore and when determined shall be deemed a part of this judgment.

(6) This court retains jurisdiction of the subject matter and of the parties herein for the purpose of enforcing this judgment.