KEHOE, Judge.
Appellant, defendant below, brings this appeal from an order on mandate dated January 18,1977, entered by the trial court. The decretal portion of the order reads as follows:
“CONSIDERED, ORDERED AND ADJUDGED
(a) The provision of the zoning ordinance of the City of Miami Beach in so far as it restricts and limits the use of the subject property to PUD-1 zoning is arbitrary, unconstitutional and void.
(b) That a transitional use for this property, consistent with the use of the neighborhood and the changes in the area for professional office use is consistent with C-2 zoning. The property is not suitable for business use and business should be prohibited other than professional office use.
(c) In its prior opinion this trial Court recommended that the zoning might also be similar to that of the Howard Johnson Hotel which has been referred to. As the zoning has been changed, however, the closest zoning which would permit such a use is RM-100.
(d) The Court retains jurisdiction of this cause for the purpose of enforcing this Order. The Court further reserves jurisdiction to determine whether or not set back or other restrictions are reasonable with reference to the Plaintiff’s property.
(e) Costs shall be taxed against the Defendant.”
Appellant contends: that the trial court’s order is contrary to the opinion and mandate of this court in the case of City of Miami Beach v. Breitbart, 280 So.2d 18 (Fla. 3d DCA 1973) [hereinafter cited as Breit-bart]; that the trial court erred by declaring invalid a zoning ordinance which protected and promoted the health, safety, morals, and welfare of the community in relation to the use of property; and that the trial court erred by invading the legislative province of appellant. We have concluded that, by rezoning the subject property to PUD-1, the City of Miami Beach City Council has complied with this court’s opinion and mandate in Breitbart; therefore, the order on mandate appealed is reversed.
The property involved was initially the subject of the case of City of Miami Beach v. Breit Bay, Inc., 190 So.2d 354 (Fla. 3d DCA 1966). In that case, we upheld a final decree enjoining the City from restricting *565 the use of this property to single family purposes. Thereafter, the City rezoned the property RM-14 (Multiple-Family Low Density District).[1]
On July 1, 1970, appellee filed a complaint attacking the RM-14 classification. Appellee sought to use his property for either an apartment house, a high rise, or business building. The trial court found that the RM-14 classification was arbitrary and unconstitutional, and it directed the City to rezone the property so as to not restrict its use for professional office or motel use.
On appeal, in Breitbart, we upheld that portion of the amended final judgment entered by the trial court which held:
“ ‘The provision of the Zoning Ordinance of the City of Miami Beach, Florida, insofar as it restricts and limits the use of the above described land [by classification RM-14] is arbitrary and unconstitutional and void.’ ” 280 So.2d at 19.
However, we modified that portion of the amended final judgment which directed the City to rezone the property so that it could be used for professional office or motel use, and substituted the following provision:
“ ‘ . . . The City of Miami Beach is ordered to promptly reconsider the rezoning of the property in a manner not inconsistent with the decision of the circuit court and the opinion of the District Court of Appeal.’ ” 280 So.2d at 19.
Thereafter, on September 4, 1974, appellant, through its City Council, passed and adopted Ordinance No. 74-2003. This ordinance classified the subject property as PUD-1 (Planned Unit Development Residential District).[2]
*566 The trial court, in its order on mandate entered January 18, 1977, stated that the cause came on to be heard before it upon appellee’s motion to have the subject property rezoned in accordance with our opinion and mandate in Breitbart. Further, the trial court recited certain of the previous findings of fact contained in its final judgment entered on March 10, 1972. Further still, the trial court concluded that the PUD-1 zoning “could effectively deny the plaintiff [appellee] the use of his property.” [Emphasis added.]
Because of the actions of the parties by acting on our opinion and mandate, we are now confronted with the following dilemma: appellant, in rezoning appellee’s property, has concluded that PUD-1 was the appropriate zoning classification of the property; whereas the trial court has determined that such classification fell short of its judgment and our mandate, and, therefore, was arbitrary, unconstitutional, and void.
We have carefully reviewed the record and find that the reason for appellant’s classification is best understood by quoting the following testimony of Mr. Toal, Director, City of Miami Beach Planning Board, given before the City Council on August 7, 1974:
“And, when you give your recommendations Mr. Toal, please let Council know the various alternatives that were considered by the Planning Board. All right, sir.
TOAL: As I say, this was sent to the Planning Board by the City Attorney, based upon a directive of the Circuit Court to rezone this property. The history of this is unfortunately back in 1960 when the State Road Department acquired this for highway purpose. They did not acquire this parcel, and left a very bad situation from the standpoint of zoning. This property was ordered rezoned by the Circuit Court several years ago, I think five or six years ago, at that time, it was single family. The court ordered the Council at that time to rezone it. The Council then put it in an RDE classification which was really like a quad-wraps or a double duplex type of zoning. Now when we created the new zoning ordinance in 1971, our RM 14, which is our lowest density, multiple family, was the nearest thing to an RDE. So, we changed it from RDE at that time to RM 14. We felt that this was the absolute maximum we would like to see. Now, this court order has said the RM 14 must be changed this zoning must be made more liberal. Our next district from RM 14 would be RM 60 which allows sixty units per acre. Like I say, that under the present zoning this property has a square footage of 26,455 square feet. At the present time, under RM 14 it would be impossible to build between eight and nine apartment units with a forty foot height limitation. There is a height limit on the RM 14 district. Under the going back a minute, we didn’t want to go to RM 60, we thought that was much too *567 liberal from the standpoint of density, as well as other permitted uses in that particular district. We didn’t feel it was proper to create a new district, just one specific district for one piece of property, so therefore, after going over this very carefully, realizing that we had to come up with a recommendation, to liberalize this zoning, we felt the part of a planned unit development district was most proper. First of all, it would allow a total number of units of some twenty-three, a total of twenty three. Beyond this, what we like about the part is that it requires a site-plan, must be submitted to the Planning Board, for public hearing and the City Council, and we feel it does give some control, therefore, we felt that having to rezone this property, and having to make it more liberal, that the PUD-1 is the best answer to the situation.
WEINSTEIN: Just by way of giving the members of Council the benefit of actual figures, the number of units per acre, I was under the impression just a few minutes ago when we referred to this property, that it was 14 units per acre
TOAL: It is now RM 14, which is 14 units per acre at the present time.
WEINSTEIN: And the court has turned us down on that?
TOAL: Yes.
WEINSTEIN: And, the court now says we must go to a greater density, or a more liberal .
TOAL: This time we’ve got to go to a more liberal type of zoning.
WEINSTEIN: And, the next most liberal type used is PUD-1.
TOAL: Yes sir.
WEINSTEIN: Which would allow, and give us those figures, not only for us, but for the members of the public.
TOAL: It would allow twenty-three units on this particular piece of property. Which is .61 acres. It’s a little more than half an acre; it’s some 26-1/2,000 square foot of area. But, it does give you the site-plan controls and therefore any development here, must come to both the board and the Council for a final review. And, the Council does have the prerogative of imposing additions or controls, because of the site-plan analysis.” Council Minutes, City of Miami Beach, at 39, August 7, 1974.
This court on several prior occasions has set forth the principles applicable to the determination of zoning cases, such as this one. See, e. g., Moviematic Industries Corp. v. Board of County Commissioners of Metropolitan Dade County, 349 So.2d 667 (Fla. 3d DCA 1977); Hart Properties, Inc. v. Metropolitan Dade County, 346 So.2d 1199 (Fla. 3d DCA 1977); Town of Hialeah Gardens v. Hebraica Community Center, Inc., 309 So.2d 212 (Fla. 3d DCA 1975), and Dade County v. Beauchamp, 348 So.2d 53 (Fla. 3d DCA 1977). With these principles in mind, we have reviewed the entire record, studied the briefs of the parties, and listened to the oral arguments of counsel; from this consideration, we have concluded that appellee totally failed to establish that the rezoning of his property was arbitrary, unconstitutional, or void. Further, we have concluded that the classification of PUD-1, as applied to appellee’s property in the instant case, was fairly debatable. Accordingly, the order on mandate appealed is reversed and the cause is remanded for the trial court to enter an order consistent with this opinion.
Reversed and remanded.

.Section 6-2, Zoning Ordinance, No. 1891, City of Miami Beach (Sept. 1, 1971, as revised) describes RM-14, Multiple-Family Low Density District as follows:
“A. DISTRICT PURPOSE: This is a low density, low rise, single and multiple family, permanent residence District.
B. USES PERMITTED. No land, water or structure may be used, in whole or in part, except for one or more of the following uses:
1. Apartment building
2. Group houses
3. One- or two-family dwelling.
4. The following uses may be permitted as a Conditional Use:
a. Church, synagogue and temple.
b. School, elementary or high, having a curriculum substantially equivalent to public schools of comparable grades and having approval of the State Department of Education.
c. Public and governmental buildings and uses.
d. Public utilities or public service uses, structures and appurtenances thereto.
e. Temporary use for a period not to exceed 15 days.
f. Publicly owned and operated recreation facility, playground, playfield, park and beach.
5. Accessory uses for above uses.
C. MINIMUM LOT AREA. 6,000 square feet.
D. MINIMUM LOT WIDTH. 50 feet.
E. MINIMUM YARDS. As provided in Section 8.
F. MAXIMUM DENSITY. 14 units per acre.
G. MAXIMUM BUILDING HEIGHT. 30 feet.

H.MINIMUM FLOOR AREA.

1. Single-family detached dwelling: 1,800 square feet.
2. Two-family dwelling and group house: 900 square feet per dwelling unit.
3. Apartment building: 750 square feet per dwelling.”

. Section 6-3, Zoning Ordinance, City of Miami Beach (Sept. 1, 1971, as revised) describes PUD-1, Planned Unit Development Residential District as follows:

"PUD Planned Unit Development Residential District.

A. DISTRICT PURPOSE. PUD District is intended for a transitional area where there is a need for allowing flexibility as to the arrangement of buildings and a need to regulate access and circulation in order to preserve the character and natural habitat of an existing neighborhood. Large sites best lend themselves to this type of development and incentives have been provided to encourage assembly of properties. The proposed development must be designed to produce an environment of desirable character and in harmony with the particular area. The provisions herein are intended to result in a superior quality of housing and open space relationships, high standards for recreation areas, parking areas and service areas. The objectives can only be defined in general terms and their realization can be obtained only by review and approval of the development plans for each development in the PUD Residential District.
B. USES PERMITTED.
1. Single family detached dwelling.
*566 2. The following uses are subject to site plan approval:
a. Two family dwelling
b. Group house
c. Apartment building
d. Churches, synagogues and temples
e. Accessory uses for above
C. MINIMUM LOT AREA.
1. PUD-1: 7,000 square feet
D. MINIMUM LOT WIDTH.
1. PUD-1: 50 feet
E. MINIMUM YARDS.
1. PUD-1: Front, side and rear yard minimums shall be determined according to specific site plans but shall not be less than those specified for MF-10 unless approved otherwise.
F. MAXIMUM HEIGHT. None
G. MINIMUM FLOOR AREA. 800 square feet per dwelling unit.
H. MAXIMUM FLOOR AREA RATIO. 2.0
I. MAXIMUM LOT COVERAGE.
I. PUD-1: 50%
J. MAXIMUM DENSITY.
1. PUD-1: Density is determined by size of the site as specified below:
LOT AREA 7,500 15,000 22.500 30,000 37,000/QVER
UNIT/ACRE 30 35 40 45 50
K. SITE PLAN APPROVAL.
1. When required a site plan shall be submitted, meeting the requirements of Section 14, and other information as may be required by the specific project.
2. Procedures: Approval of site plan shall be in accordance with Section 7-1, D, as applied to conditional uses.”