382 So.2d 673 (1980)
Douglas Ray MEEKS, Appellant,
v.
STATE of Florida, Appellee.
No. 58618.
Supreme Court of Florida.
March 20, 1980.
Rehearing Denied May 19, 1980.
Stephen D. Stitt and June Rice, Gainesville, for appellant.
*674 Jim Smith, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., Tallahasee, for appellee.
PER CURIAM.
This is an appeal from an order denying Douglas Meeks' motions for post-conviction relief under Florida Rule of Criminal Procedure 3.850. Appellant requested an evidentiary hearing on his motions and a stay of execution pending disposition thereof. Having reviewed the record and having heard oral argument, we concluded that appellant was entitled to a stay of execution pending disposition of this appeal. The stay of execution was entered on February 11, 1980, after oral argument on that date.
Appellant has been convicted of first-degree murder and sentenced to death on two separate occasions. On March 12, 1975, appellant was convicted and sentenced to death for the murder of Lloyd Walker (lower court No. 74-299 CF). This Court affirmed the conviction and sentence on October 28, 1976, reported at 339 So.2d 186 (Fla. 1976). On May 6, 1977, we issued a Gardner[1] order directing the trial judge to state whether his sentence was based on any information not known to appellant. On May 18, 1977, the judge responded that he had relied in part on a psychiatric report which had not been furnished to appellant. This Court remanded the cause to the trial court for an evidentiary hearing on the issue, at which time it was learned that appellant's trial counsel had been present during the examination upon which the report was based. Appellant was afforded an opportunity to rebut the contents of the psychiatric report, but his testimony at the hearing only confirmed the report's accuracy. On November 2, 1978, we reaffirmed the death sentence, 364 So.2d 461 (Fla. 1978). Appellant sought review of his original conviction and sentence as well as the Gardner proceeding by petition for writ of certiorari to the United States Supreme Court, which was denied, 439 U.S. 991, 99 S.Ct. 592, 53 L.Ed.2d 666 (1978).
On June 4, 1975, appellant was convicted and sentenced to death for the murder of Chevis Thompson (lower court No. 74-300 CF). We affirmed the conviction and sentence on July 21, 1976, 336 So.2d 1142 (Fla. 1976). In response to this Court's Gardner order of May 6, 1977, the trial judge stated that his sentence had been based exclusively on information known to appellant. On January 11, 1979, we issued an order declaring this case final.
Appellant filed motions for post-conviction relief pursuant to rule 3.850 of the Florida Rules of Criminal Procedure on December 11, 1979 (directed to case No. 74-299), and on December 31, 1979 (directed to case No. 74-300). On January 31, 1980, a hearing was held in the trial court to determine whether an evidentiary hearing should be granted.[2] The trial judge denied the motion for evidentiary hearing. A second hearing was held on February 5, 1980, to determine whether a stay of execution should be granted and whether appellant was entitled to the relief requested in his rule 3.850 motions. Pro forma orders denying *675 relief were filed on February 5, 1980. In an amended order dated February 8, 1980, the trial judge denied appellant's motion for post-conviction relief in case No. 74-299.
Appellant alleges the following six grounds for relief in his rule 3.850 motion with respect to his murder conviction in case No. 74-299 CF: (1) that court-appointed counsel did not render effective assistance of counsel at trial, at the sentence hearing, or on appeal; (2) that defendant's death sentence was imposed in violation of the sixth, eighth and fourteenth amendments to the United States Constitution because it was imposed upon the recommendation of a jury that was not required to be unanimous; (3) that the jury was selected through procedures that systematically excluded from jury service persons having scruples against the death penalty in violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); (4) that defendant's death sentence violates the equal protection clause of the state and federal constitutions because it was imposed pursuant to a pattern and practice of racial discrimination in capital sentencing; (5) that there was no evidence of premeditation in the charge of murder and that, therefore, defendant could not be convicted of felony-murder and the underlying felony upon which the murder conviction was based; and (6) that defendant is entitled to a resentencing hearing on his first-degree murder conviction because statutory mandates were not followed and the prosecutor was allowed to make improper argument to the jury in contravention of due process of law. Except for ground 5, appellant alleges the same grounds for relief with respect to his murder conviction in case No. 74-300 CF and, in addition, alleges (6) that the defendant is entitled to a new trial because the prosecutor was allowed to make improper and inflammatory comments at closing argument; (7) that the sentencing judge's use of a court-ordered psychiatric examination violated defendant's rights under the fifth, sixth, eighth and fourteenth amendments to the Constitution because defendant abandoned his insanity defense before trial; and (8) that defendant's death sentence is unconstitutional as applied under the eighth and fourteenth amendments to the Constitution because it is part of a wanton and freakish pattern of imposition in the State of Florida. All except two of the foregoing issues were or could have been raised on direct appeal and therefore are foreclosed in this proceeding for collateral review. Adams v. State, 380 So.2d 423 (Fla. 1980). Henry v. State, 377 So.2d 692 (Fla. 1979); Sullivan v. State, 372 So.2d 938 (Fla. 1979). The two grounds cognizable for collateral attack here are the allegations of ineffective assistance of counsel and racial discrimination in capital sentencing (grounds 1 and 4 in both rule 3.850 motions).
In support of ground 1, appellant cites a number of specific instances in which counsel's failure to act allegedly amounted to ineffective assistance of counsel at the trial, sentencing and appeal stages of both proceedings. Predicated on these specific allegations, appellant contends that counsel's overall performance demonstrates that appellant was given only pro forma representation. We note first of all that a conviction is presumed to be valid. Therefore, when ineffective assistance of counsel is asserted, the burden is on the person seeking collateral relief to specifically allege and establish the grounds for relief and to establish whether these grounds resulted in prejudice to that person. Foxworth v. State, 267 So.2d 647 (Fla. 1972), cert. denied, 411 U.S. 987, 93 S.Ct. 2276, 36 L.Ed.2d 965 (1973). Second, the appropriate test to be applied in determining whether defendant was afforded effective assistance of counsel is not "sham and mockery," but whether counsel was reasonably likely to render and did render reasonably effective counsel based on the totality of the circumstances. United States v. Gray, 565 F.2d 881 (5th Cir.), cert. denied, 435 U.S. 955, 98 S.Ct. 1587, 55 L.Ed.2d 807 (1978). This does not mean, however, that defendant must be afforded errorless counsel or that counsel will be judged ineffective by a standard based on hindsight. United States v. Fessel, 531 F.2d 1275 (5th Cir.1976). *676 Nor does this standard mean that counsel is to be judged ineffective by virtue of his failure to anticipate future developments in the law. Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); Davis v. Wainwright, 547 F.2d 261 (5th Cir.1977).
Pursuant to a rule 3.850 motion, a prisoner is entitled to an evidentiary hearing unless the motion and the files and records in the case conclusively show that he is entitled to no relief. If the prisoner raises a matter that may properly be considered in a rule 3.850 motion, the trial judge reviewing the motion must either attach that portion of the case file or record which conclusively shows that the prisoner is entitled to no relief or grant an evidentiary hearing. Gunn v. State, 378 So.2d 105 (Fla. 5th DCA 1980); Giles v. State, 363 So.2d 164 (Fla. 3d DCA 1978); Payne v. State, 362 So.2d 688 (Fla. 2d DCA 1978). Based on our review of the record presented to this Court, we cannot say that appellant's specific allegations of ineffective assistance of counsel, considered collectively, conclusively show a lack of merit so as to obviate the need for an evidentiary hearing into the matter.
With regard to ground 4, the court is not persuaded that appellant is entitled to an evidentiary hearing respecting his contention that Florida's death penalty statute is imposed in an unconstitutionally discriminatory fashion.
Accordingly, to the extent that the trial court's orders and amended order deny relief under rule 3.850 with respect to the ground of ineffective assistance of counsel, they are hereby reversed. The orders are in all other respects affirmed. This case is remanded to the trial court for a prompt evidentiary hearing on the question of ineffective assistance of counsel. The stay of execution previously granted by this Court on February 11, 1980, is dissolved.
It is so ordered.
ENGLAND, C.J., and OVERTON, SUNDBERG, ALDERMAN and McDONALD, JJ., concur.
OVERTON, J., concurs specially with an opinion, with which ALDERMAN and McDONALD, JJ., concur.
SUNDBERG, J., concurs specially with an opinion, with which ENGLAND, C.J., concurs.
ADKINS, J., dissents with an opinion, with which BOYD, J., concurs.
OVERTON, Justice, specially concurring.
I would totally reject the contention of the movant-appellant that a victim-oriented statistical factual basis may be submitted within the purview of Henry v. State, 377 So.2d 692 (Fla. 1979), to show that Florida's death penalty statute is imposed in an unconstitutional and discriminatory manner.
The appellant's statistical allegations are based entirely on the race of the victim rather than the race of the offender. To try to statistically correlate offenders' race with the race of their victims results in a mathematical nightmare which has no bearing on the actual conduct of the offender as the determining factor of who lives and who dies. We are obligated to review each case upon its facts and circumstances and determine whether or not the conduct of the offender justifies the imposition of the death penalty.
The appellant's own statistical allegations clearly establish that this black appellant has not been prejudiced. The figures specifically reflect that of the 2,606 homicides committed by blacks, fifty-nine have resulted in the death penalty. On the other hand, of the 2,256 homicides committed by whites, seventy-two have resulted in the death penalty. These statistics reflect no disparity or discrimination. In my view, the statistical information submitted by appellant in this cause is similar to that rejected by the Fifth Circuit Court of Appeals in Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979). There Spinkellink submitted statistical evidence which reflected that "92 percent of the inmates on Florida death row had murdered white victims *677 while only 8 percent had murdered black victims." [Emphasis added.] 578 F.2d at 612. This data was held to be legally insufficient to establish a prima facie showing of racial discrimination. I conclude that the instant figures similarly fail to establish a factual basis for the proposition that our death penalty statute is being applied in a discriminatory manner or is not racially neutral. See Lewis, Mannle, Allen, and Vetter, A Post-Furman Profile of Florida's Condemned  A Question of Discrimination in Terms of the Race of the Victim and a Comment on Spinkellink v. Wainwright, 9 Stetson Law Review 1 (1979).
ALDERMAN and McDONALD, JJ., concur.
SUNDBERG, Justice, concurring specially.
While I concur in the Court's opinion and judgment in this case, I deem it appropriate to express the reason for my concurrence in the conclusion that appellant is not entitled to an evidentiary hearing regarding his contention that Florida's death penalty statute is imposed in an unconstitutionally discriminatory fashion. The reason is that I do not believe appellant has made a sufficient preliminary showing to require such a hearing. Counsel for appellant urges us to adopt the test enunciated in Castaneda v. Partida, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), as a guide in determining whether our statute has been unevenly applied. Pursuant to that test it would be appellant's task to show: (1) a marked statistical disparity over a significant period of time in the way the death penalty is imposed upon black and white capital defendants, and (2) that the capital sentencing procedure in Florida is susceptible of abuse or not racially neutral. If appellant introduced competent evidence in support of these two elements, he would have made a prima facie showing of discriminatory application of the death penalty, and the burden would then shift to the state to rebut appellant's case. Id. at 494-95, 97 S.Ct. at 1280. See Rose v. Mitchell, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979); Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Assuming, without deciding, that the Castaneda test is an appropriate analytical tool in this case,[*] appellant has failed, even on a preliminary basis so as to justify an evidentiary hearing, to present a sufficiently compelling statistical showing over a significant period of time that Florida's death penalty statute has been unconstitutionally applied. I would note incidentally that appellant's statistical data is victim-oriented; there has been no showing of disproportionate black representation of those now residing on death row as a result of the operation of our capital sentencing statute, section 921.141, Florida Statutes (1979).
ENGLAND, C.J., concurs.
ADKINS, Justice, dissenting.
The motion, the files, and the records in the case conclusively show that defendant is not entitled to relief. The trial judge properly denied an evidentiary hearing.
After meticulously picking through the record, appellate counsel has differed with the judgment of trial counsel in the manner in which certain portions of the trial were conducted. Therefore appellate counsel says trial counsel should be placed upon trial before the trial judge. The trial judge has carefully considered contentions of appellate counsel and decided that trial counsel rendered reasonably effective counsel based on a totality of the circumstances. The record disclosed this on its face, so the trial judge denied the motion. Appellate counsel now complains to us, saying the trial judge committed error. We have examined this record twice in the past, and our decision was not disturbed by the United States Supreme Court. The majority has been led into a quagmire of confusion and decided that still another hearing should be held.
*678 Using general terms and without setting forth specific guidelines, the majority is telling the trial judge to try trial counsel. Even a defendant in a criminal case requires a more definite specification of charges before he is required to answer.
The guilt of the defendant is firmly established by the evidence. The trial judge justified his sentence of death in writing and provided this Court the opportunity for a meaningful review. We determined that the trial judge viewed the issue of life or death within the framework of the rules provided by statute. The Supreme Court of the United States agreed with us.
As stated in State v. Dixon, 283 So.2d 1 (Fla. 1973), discrimination or capriciousness cannot stand where reason is required. This was an aggravated and indefensible crime. The alleged statistics gathered by appellate counsel do not change the nature of this crime nor do they have any bearing on whether this particular defendant should or should not receive capital punishment.
The citizens of our state, speaking through the legislature, have determined that capital punishment should be inflicted in certain instances. The Supreme Court of the United States has held that our form of procedure is constitutional. This Court has followed the guidelines set forth by the legislature and approved by the United States Supreme Court. If we continue to create new procedures, and cause more delays, the deterrence of capital punishment will be ineffective.
To be successful in his contention, the defendant would be required to show that the procedure under which a person is selected for a death sentence is susceptible to abuse or not racially neutral. Unless there is a scheme or conspiracy among the twenty state attorneys in Florida to seek death penalties primarily when a white victim has been murdered, then race-of-the-victim argument must fail under its own weight. Also, the imposition of the death penalty ultimately requires the concurrence of the trial judge, the Florida Supreme Court, and the Governor's Executive Clemency Board. To be successful, the defendant must show that all of these officers participated in intentional or purposeful discrimination. As stated in "A Post-Furman Profile of Florida's Condemned, etc.," by Lewis, Mannle, Allen and Vetter, 9 Stetson Law Review 1 (Fall 1979), "it is thus unlikely that any defendant will be able to establish a prima facie case of purposeful discrimination based on a `race-of-the-victim' hypothesis."
Our system guards against discrimination in terms of the race of the victim and is not subject to attack on that basis.
Our responsibility is a tremendous one in capital cases. However, this defendant has received a fair and impartial trial, counsel was reasonably effective based on the totality of the circumstances, and there is a total absence of discrimination in the imposition of the death penalty.
In my opinion the stay order should be dissolved and the decision of the trial judge should be affirmed.
BOYD, J., concurs.
NOTES
[1] Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977).
[2] Rule 3.850 provides in pertinent part:

If the motion and the files and records in the case conclusively show that the prisoner is entitled to no relief, the motion shall be denied without a hearing. In those instances when such denial is not predicated upon the legal insufficiency of the motion on its face, a copy of that portion of the files and records which conclusively shows that the prisoner is entitled to no relief shall be attached to the order. Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the prosecuting attorney of the court, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or is otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant him a new trial or correct the sentence as may appear appropriate.
[*] Indeed, that the Castaneda analysis is appropriate in the context of an equal protection challenge to Florida's death penalty statute is not without some doubt. See Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978).