388 So.2d 651 (1980)
STATE of Florida, Appellant,
v.
Ernest Lee DUKES, Appellee.
No. 79-189.
District Court of Appeal of Florida, Second District.
October 1, 1980.
Jim Smith, Atty. Gen., Tallahassee, and James S. Purdy, Asst. Atty. Gen., Tampa, for appellant.
Angelo M. Ferlita of Diecidue, Ferlita, Prieto & Nutter, Tampa, and Anthony Alfonso, Jr., Tampa, for appellee.
PER CURIAM.
In 1977 appellee was convicted of rape. He was represented throughout the proceedings by privately retained counsel. In 1979 he moved to vacate the judgment on the ground that his attorney had been incompetent and ineffectual. An evidentiary hearing was conducted; thereafter the trial court granted the motion and ordered a *652 new trial. We affirm. Cuyler v. Sullivan, ___ U.S. ___, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); Chambers v. State, 388 So.2d 1259 (Fla. 2d DCA 1980); Spencer v. State, 385 So.2d 119 (Fla. 1st DCA 1980).
BOARDMAN, Acting C.J., and DANAHY, J., concur.
OTT, J., specially concurring.
OTT, Judge, concurring specially.
Until now the courts of this state have consistently denied post-conviction relief from alleged incompetence of privately retained counsel. See Capetta v. Wainwright, 203 So.2d 609 (Fla. 1967). I concur in the affirmance of an order based on a contrary view because I am forced to concede that the effect of the opinion of the United States Supreme Court in Cuyler v. Sullivan, ___ U.S. ___, 100 S.Ct. 1708, 64 L.Ed.2d 333, is to overrule Capetta. However, if it were not for Cuyler I would reverse the present order.
In my opinion there are valid, if not compelling reasons, both practical and philosophical, why the ineffectualness of privately retained counsel should not be ground for post-conviction relief. I am painfully aware that I am but shouting into the wind but conscience dictates that I not only register my disapproval of this new rule, but explain the reasoning that leads me to an opposite conclusion.
First, I am apprehensive that another floodgate has been opened to inundate our courts with long-convicted but ever-hopeful felons. Unless the holding of Cuyler is to be given only prospective application, there is little we can do to escape consequences similar to the aftermath of Gideon.[1]
It is scarcely a secret that the overwhelming majority of those convicted of crime assert that they "got a raw deal", and it is not speculative to suggest that a very high percentage are convinced that the root of their "miscarriage of justice" lies in the incompetence of their lawyers. The new concept encourages the pursuit of that notion, and every convict has nothing to lose and everything to gain by doing so. It is wishful thinking to deny the probable consequences of this change in official attitude.
Also in a practical vein, throughout the entire course of a criminal proceeding the trial judge will now be required to spend as much time judging the competence, adequacy, diligence, preparation and even the strategic judgment of defense counsel as in the conduct of a fair trial. At a very minimum, the trial courts must now be constantly concerned that a proper record is being made, in order that a reviewing court can determine from that record whether defense counsel exhibited an acceptable standard of competence.
Viewed from another practical angle, the new rule has disturbing potential for crafty strategists to further handcuff our judicial system and turn rules designed to improve the quality of justice into tools to impede, delay and ultimately subvert justice. Those attorneys who are adjudged "incompetent" (assuming they keep their license) may soon find that a premium has been placed on their services, as criminal defendants vie for a ticket to a sure reversal should their first trial end in conviction. Instead of helping to eliminate incompetence, the new rule encourages, or at least invites, it as standard defense strategy.
A particularly vexatious ramification of the new rule concerns the role which trial courts should play in preventing the prejudicial effect of inadequate representation. What, specifically, is a trial judge supposed to do when, in his opinion, incompetence is observed? Must the trial be interrupted while new counsel is obtained? Should the judge himself undertake to privately lecture the erring attorney on how to try a case "effectively"? Must the judge secondguess each ploy and strategy attempted by the defense? Or is the judge supposed to sit quietly by and watch a long, exhausting (and expensive) trial go for naught? Finally, what happens if the learned jurist isn't any more "learned" than the lawyer, and permits "incompetence" (as measured by *653 the appellate court) to pass unchallenged because it simply wasn't recognized? Does that compound the violation of constitutional rights? In short, if the law is to be that every accused is entitled to not just a lawyer, but a smart lawyer, won't that require a judge who is even smarter?
If anyone would minimize my apprehensions as unrealistic, consider the new wrinkle patched into the California body of law as a direct result of the "modern view" of the ineffectualness of counsel. It has long been the law there, as it is in most jurisdictions, that inadmissible, prejudicial evidence admitted without defense objection is not normally reversible error. Under the "enlightened" concept that produced Cuyler, failure to object, while waiving error on the grounds of admissibility, is now taken as proof of defense counsel's incompetence, entitling the convicted defendant to-right, a new trial! See e.g., People v. Sundlee (1977), 70 Cal. App.3d 477, 482, 138 Cal. Rptr. 834, 836. Pity the poor prosecutor (and his clients, the people of the state) forced to play with that stacked deck.
My fundamental objection to the new rule, however, goes to its implication that the Constitution guarantees every accused a perfect or at least a masterful (albeit not necessarily successful) defense, and that the state must make good on that warranty. I can find no basis for that notion.
I would be the first to agree that lawyers, whom society looks upon as experts in the law, should be held to a high standard of skill, just as doctors, dentists and engineers are expected to achieve and maintain a certain minimum proficiency. Consequently, I think it entirely proper that the State of Florida regards the practice of law as a privilege rather than a right, and that our supreme court is empowered and charged with the duty of promulgating and enforcing meaningful standards of education, character, conduct and practice for the lawyers of this state.
At that point, however, I would draw the line. In my opinion those measures fulfill any obligation the people of this state might owe to those charged with crime to reasonably insure that the lawyers who will defend them are competent to do so. It is my understanding of the function, role and duty of lawyers who practice at the criminal bar of our society that they defend an accused as vigorously, as conscientiously and as thoroughly as he would defend himself were he trained to do so. It seems to me that the new rule amends that to read "as he would defend himself were he Clarence Darrow".
A record that discloses defense error is in no manner of speaking conclusive proof of incompetence. At best, it merely confirms that the judge or the attorney were no more perfect than the accused, whose own errors of judgment or deportment more than likely brought him to the criminal bar in the first place. To charge the state with the duty to insure that every accused received an error-free defense, upon pain of reversing the conviction and, perhaps, permitting the crime to go unpunished, is to set a "standard" that lawyers cannot meet-and that society cannot afford.
NOTES
[1] Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.