389 So.2d 669 (1980)
Harold G. BLATCH, Appellant,
v.
The STATE of Florida, Appellee.
No. 80-320.
District Court of Appeal of Florida, Third District.
October 21, 1980.
*670 Bennett H. Brummer, Public Defender, and Peter Raben, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Anthony C. Musto, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, NESBITT and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
In 1951, Harold Blatch was convicted of first-degree murder and sentenced to life imprisonment. Seventeen years later, Blatch, asserting that he had been denied his right to appeal, was accorded a belated appeal. His conviction was affirmed by this court. Blatch v. State, 216 So.2d 261 (Fla.3d DCA 1968). In 1979, Blatch filed a motion to vacate under Florida Rule of Criminal Procedure 3.850, contending for the first time that his retained trial counsel was ineffective and that he was thus deprived of his Sixth Amendment right to counsel and due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.
*671 The ineffectiveness of counsel lay, according to Blatch, in his counsel's failure to move to suppress or object to the admission of Blatch's confession to the police obtained within several hours of the murder.[1] Blatch contended below, and contends here, that the inadmissibility of this confession was so obvious that any attorney would have sought its exclusion, and the failure to do so was blatant and rendered the proceeding fundamentally unfair.

I.

The Right To Attack The Competency Of Retained Counsel.
Only several months ago we noted in State v. Garmise, 382 So.2d 769, 772 (Fla.3d DCA 1980), that the courts of this state "have consistently held in a long line of decisions that a defendant is precluded from attacking the competency of his privately retained counsel as a ground for collateral attack of his criminal conviction under Fla.R.Crim.P. 3.850." Once again, following this unbroken line of authority, we held in Garmise that the ineffective assistance of retained counsel did not constitute a ground for Rule 3.850 relief.
We are today of the view that the "long line of decisions" relied upon in Garmise has been undermined by the decision of the United States Supreme Court in Cuyler v. Sullivan, ___ U.S. ___, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980),[2] which we believe prevents us from rejecting claims of ineffective assistance for the reason that counsel was retained:
"A proper respect for the Sixth Amendment disarms petitioner's contention that defendants who retain their own lawyers are entitled to less protection than defendants for whom the State appoints counsel. We may assume with confidence that most counsel whether retained or appointed, will protect the rights of an accused. But experience teaches that, in some cases, retained counsel will not provide adequate representation. The vital guarantee of the Sixth Amendment would stand for little if the often uninformed decision to retain a particular lawyer could reduce or forfeit the defendant's entitlement to constitutional protection. Since the State's conduct of a criminal trial itself implicates the State in the defendant's conviction, we see no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers." Cuyler v. Sullivan, ___ U.S. at ____, 100 S.Ct. at 1716.
But Blatch's claim was brought and his trial was held before Cuyler. We are persuaded, however, that neither of these facts is an impediment to our reaching, as did the trial court, the merits of his claim, since the conclusion that Cuyler must be applied retroactively is inescapable.
Every case affording the right to the assistance of counsel in trial and appellate proceedings has been held to be retroactive. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), declaring the right to counsel at felony trials, was held retroactive in Kitchens v. Smith, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971); was held retroactive as to prior convictions used to increase punishment in Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); and was held retroactive as to prior convictions used to impeach in Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972). Argersinger *672 v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), declaring the right to counsel at misdemeanor trials involving loss of liberty, was held retroactive in Berry v. Cincinnati, 414 U.S. 29, 94 S.Ct. 193, 39 L.Ed.2d 197 (1973). Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), declaring the right to counsel at probation revocation hearings, was held retroactive in McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968). White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), declaring invalid the use of a guilty plea taken without assistance of counsel, was held retroactive in Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968). Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), declaring the right to assistance of counsel on appeal, was held retroactive in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), declaring the right to counsel at arraignment and plea, was held retroactive in Stovall v. Denno, supra. Since the right to the effective assistance of counsel is the constitutional equivalent of the right to counsel, McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), the theory upon which retroactivity of the right to counsel is based equally supports the retroactivity of the right to effective counsel.

II.

The State's Defense That The Claim Is Barred By Laches.
Our determination that Cuyler opens the way for the consideration of Blatch's claim is only a partial step over the threshold toward the merits. Before going further, we must address the State's contention that Blatch's claim is barred by laches. It is apparent that nearly three decades went by before Blatch first made this claim. By 1979, Blatch's attorney and the trial judge were dead. The State claimed that witnesses required for a retrial were unavailable. At first blush it would seem that the defense of laches, sustainable when there has been a lack of due diligence by the defendant and prejudice to the State, see Remp v. State, 248 So.2d 677 (Fla.1st DCA 1970), might apply to Blatch's claim. See also Babson v. Wainwright, 376 So.2d 1187 (Fla.5th DCA 1979); Broxson v. Wainwright, 271 So.2d 478 (Fla.1st DCA 1973). But the claim which Blatch asserts, ineffectiveness of retained counsel, was not viable in Florida during the 28 years after his conviction and before the filing of his Rule 3.850 motion. See State v. Garmise, supra.
Under these circumstances, we cannot conclude that Blatch lacked due diligence in failing from 1951 to 1979 to seek collateral relief on the ground that his retained counsel was ineffective. Cf. Bashlor v. Wainwright, 369 So.2d 695 (Fla.1st DCA 1978) (holding that the time interval of 27 years after conviction does not in itself bar a claim where the asserted legal right to appointed counsel on appeal did not ripen until 15 years after the conviction). Had he sought such relief, his motion, predictably, would have been met with summary denial. The exercise of due diligence does not require the doing of an obviously futile act. Cf. United States ex rel. Reis v. Wainwright, 525 F.2d 1269 (5th Cir.1976) (federal habeas corpus petitioners challenging ineffectiveness of retained counsel in Florida state court proceedings need not exhaust state remedies where Florida rule barring relief is firmly entrenched). See Montana National Bank v. Yellowstone County, 276 U.S. 499, 48 S.Ct. 331, 72 L.Ed.2d 673 (1928); City of Miami Beach v. Breit Bay, Inc., 190 So.2d 354 (Fla.3d DCA 1966). Indeed, in 1979, when Blatch finally brought the Rule 3.850 motion under consideration, his attack could have been found by the trial court to be legally foreclosed. Instead, the trial court, perhaps anticipating the coming of Cuyler, reached the merits of Blatch's claim.

III.

The Standard Of Effectiveness To Be Applied.
Having concluded that Blatch is entitled to challenge the effectiveness of his retained *673 counsel, we must now address the question of the standard by which counsel's performance is to be measured.
In light of Florida's long standing rule that no challenge of ineffectiveness could be made where a defendant employed counsel, we are met with the obvious proposition that in our state no standard exists, or ever existed, by which retained counsel is to be judged. Until Meeks v. State, 382 So.2d 673 (Fla. 1980), the standard for measuring whether a defendant was entitled to have his conviction vacated on a claim of ineffective assistance of appointed counsel was, at least from 1964 on, Simpson v. State, 164 So.2d 224 (Fla.3d DCA 1964), whether the representation was so blatantly incompetent as to render the proceeding a farce or mockery. State v. Garmise, supra.
We conclude that in 1951, when Blatch was tried, a standard for retained counsel was nonexistent, and, although not yet announced, the farce and mockery standard, as it came to be known, applied to appointed counsel. Since the teaching of Cuyler is that there is no basis for drawing any distinction between retained and appointed counsel, and since the distinction extant in Florida in 1951 was between farce and mockery and no standard at all, we could, following Cuyler, obliterate the distinction by applying the farce and mockery standard to judge the performance of retained counsel as of 1951.
We choose, however, to apply the standard recently announced in Meeks v. State, supra, that the appropriate test for judging appointed counsel is "whether counsel was reasonably likely to render and did render reasonably effective counsel based on the totality of the circumstances," 382 So.2d at 675, since even under this more stringent standard, Blatch's claim of ineffectiveness of counsel fails. We need not in the present case decide whether the Meeks standard must be applied retroactively.[3]
This does not mean, however, that by employing this standard we will be judging counsel's conduct with hindsight or that counsel will be deemed ineffective "by virtue of his failure to anticipate future developments in the law," Meeks v. State, supra, at 676. It is clear that the law relating to the voluntariness of confessions, unlike the law relating to the right to counsel, has not been applied retroactively. See, e.g., Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) (holding that Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), are not retroactive). Therefore, the applicable test for the admission of a confession is the test existing in 1951. If Blatch's confession was admissible as a matter of law under 1951 standards, then his claim that his counsel was ineffective must fail. Kelly v. Warden, House of Correction, 468 F. Supp. 965, 973 (D.Md. 1979).

IV.

Voluntariness Under 1951 Standards.
Blatch does not contend that his confession was extracted by beatings, force, threats, extended detention or the like. His contention is that the confession was involuntary because unlawfully induced. He relies on a single statement made by the police officer at the outset of the interrogation as seen in the following colloquy:[4]

*674 "Q. What is your name?
"A. Harold George Blatch.
"Q. Where do you live?
"A. 1309 N.W. 63rd Terrace.
"Q. How old are you?
"A. Twenty-three.
"Q. Are you married?
"A. No, sir.
"Q. Harold, under your Constitutional Rights you do not have to tell us a thing, but if you tell us the truth on this whole story it will probably help you a whole lot. You understand?

"A. Yes, sir.
"Q. All right, Harold, tell us just what happened this morning." (emphasis supplied).
The interrogation concluded:
"[Q.] Since you've been arrested have you been treated all right?
"A. Yes, sir.
"Q. Nobody's threatened you?
"A. No, sir.
"Q. Nobody's promised you anything?

"A. No, sir.

"Q. Everybody's treated you all right?
"A. Yes, sir.
"Q. You haven't got any complaints about the way you've been treated?
"A. No, sir." (emphasis supplied).
As we have said, Blatch's claim of ineffective assistance of counsel must be evaluated in terms of the state of the law in 1951 respecting voluntariness of confessions and not in terms of changes in the voluntariness standard later made. Bonds v. Wainwright, 579 F.2d 317 (5th Cir.1978); Burston v. Caldwell, 506 F.2d 24 (5th Cir.1975).
The circumstances were these. Blatch, age 23, was not subjected to any physical or mental mistreatment, nor did he complain to his counsel about any. He was interrogated by two officers in the presence of a stenographer several hours after the crime. He was specifically told of his right to remain silent. He confessed immediately. The confession, given in narrative form, was totally consistent with other evidence. The statement, "if you tell us the truth on this whole story it will probably help you a whole lot," is not a promise and was not perceived by Blatch to be one. The totality of circumstances shows the confession to have been voluntary and trustworthy and, under 1951 standards, clearly admissible. See Frazier v. State, 107 So.2d 16 (Fla. 1958), and authorities cited therein.[5]

V.

The Fourth Amendment Claim.
Blatch's defense was insanity. It is undisputed that the evidence as to his commission of the crime of murder was overwhelming. Blatch points out, and we agree, that the importance of the confession does not lie in his admission to the crime. The confession, he says, was devastating to his defense because it demonstrated the manner in which Blatch responded to the questions, his attentiveness and understanding of the interrogation, his responsiveness-in a word, his state of mind within several hours after commission of the crime.
It does not appear that Blatch contended in his first appeal to this court that it was the propensity of the confession to demonstrate *675 his lucidity and sanity that caused its admission to be harmful. His challenge then was to the substance or testimonial nature of the confession which, found to be merely corroborative of admittedly overwhelming evidence of the commission of the crime, resulted in this court deciding that the admission of the confession, if error, was harmless. See Blatch v. State, supra.
Blatch's present contention, since it goes to the non-testimonial nature of the confession, does not implicate self-incrimination rights under the Fifth Amendment. See Collins v. State, 227 So.2d 538 (Fla.3d DCA 1969). See also Greenfield v. State, 337 So.2d 1021 (Fla.2d DCA 1976). It does instead present a Fourth Amendment claim. If the interrogation which served as a seizure of evidence of Blatch's conduct and behavior was unlawfully induced, then the right of Blatch's person to be free from unlawful seizure guaranteed by the Fourth Amendment would have been violated. In 1951, evidence seized in violation of the Fourth Amendment was excludable in Florida courts.[6]
However, Blatch's Fourth Amendment claim is unavailing. The evidence of his conduct and behavior was voluntarily revealed by him. The test for voluntariness, whether in a Fourth or Fifth Amendment context, is the same. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Blatch's conduct and behavior during the interrogation, even as the words of the confession, were lawfully seized by 1951 standards.
Accordingly, we hold that Blatch's counsel did not render ineffective assistance to Blatch by failing to move to suppress his statement or to object to its admission.
Affirmed.
NOTES
[1] Blatch's Rule 3.850 motion relied solely on this ground. Other alleged failures of Blatch's trial counsel were explored at the hearing, but since they were insignificant and could not, even taken together, demonstrate ineffectiveness, we need not address the State's contention that Blatch's claim should have been restricted to the ground stated in his motion. We note, however, that the burden was on Blatch to specifically allege, as well as prove, the ground for relief. Foxworth v. State, 267 So.2d 647 (Fla. 1972), cert. denied, 411 U.S. 987, 93 S.Ct. 2276, 36 L.Ed.2d 965 (1973).
[2] This view is shared by two of our sister courts. See Spencer v. State, 389 So.2d 652 (Fla. 1st DCA 1980), and Chambers v. State, 388 So.2d 1259 (Fla. 2d DCA 1980).
[3] While the standard for effectiveness of retained counsel underwent dramatic changes in the 1970's, the courts effecting these changes did not deal with retroactivity. But see Brannan v. Blankenship, 472 F. Supp. 149 (W.D.Va. 1979) (holding that the newly adopted and less stringent "reasonably effective" test should be applied retroactively).
[4] At the hearing on Blatch's motion to vacate, the defense called an expert witness, who testified that any reasonably effective criminal trial attorney would have challenged the admission of Blatch's confession and that the "inducement" in the opening words of the interrogator should have "jumped off the page" to any experienced criminal attorney. He further testified that any judge with a modicum of trial experience in criminal matters (the judge in the instant case apparently was conducting his first criminal trial) would have sua sponte directed an inquiry into the voluntariness of the statement. He said that the statement revealed a lucid mind soon after the crime and thus severely eroded Blatch's defense of insanity. The problem, as we see it, is that while the interrogator's statement might have jumped off the page to any trial attorney experienced in criminal cases in 1979, it would not have jumped off the page in 1951.
[5] In Frazier, the court held that the deputy sheriff's statement to the defendant, "John, we have enough information on you we could have picked you up last night, so you just as well get right and tell us what you know about the case, it will save you a lot of trouble," did not render the confession involuntary under a totality of circumstances more coercive than found in the present case. While Frazier was decided in 1958, it appears that voluntariness under the totality of circumstances was the test existing in 1951. See Gallegos v. Nebraska, 342 U.S. 55, 72 S.Ct. 141, 96 L.Ed. 86 (1951); Harris v. South Carolina, 338 U.S. 68, 69 S.Ct. 1354, 93 L.Ed. 1815 (1949); Turner v. Pennsylvania, 338 U.S. 62, 69 S.Ct. 1352, 93 L.Ed. 1810 (1949); Watts v. Indiana, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949).
[6] In 1951, were the evidence illegally seized, it would have been excludable in Florida courts. Atz v. Andrews, 84 Fla. 43, 94 So. 329 (1922). See also Kraemer v. State, 60 So.2d 615 (Fla. 1952); Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (App. Table II). Florida was not one of those states that was compelled by the constitutional imperative of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, (1961), to exclude unlawfully seized evidence. Sing v. Wainwright, 148 So.2d 19 (Fla. 1962). The effect of making the exclusionary rule a part of the Florida Constitution in 1968, compare Art. I, § 12, Fla. Const. (1968) with § 22 Decl. of Rts., Fla. Const. (1885), was not to impose an exclusionary rule, but rather to give the existing exclusionary rule constitutional dimension immunizing it from possible future retreat by the United States Supreme Court from its holding in Mapp. See Norman v. State, 388 So.2d 613 (Fla.3d DCA 1980).