393 So.2d 597 (1981)
Clement Lemmon EDWARDS, Appellant,
v.
The STATE of Florida, Appellee.
No. 79-1991.
District Court of Appeal of Florida, Third District.
January 21, 1981.
*598 Hersh & Bernstein, David F. Cerf, Jr., Miami, for appellant.
Jim Smith, Atty. Gen. and Calvin L. Fox, Asst. Atty. Gen., for appellee.
Before HUBBART, C.J., and BASKIN and DANIEL S. PEARSON, JJ.

REVISED OPINION
DANIEL S. PEARSON, Judge.
We granted Edwards' motion for rehearing. We withdraw our per curiam opinion filed August 12, 1980, and issue this revised opinion reversing the trial court's summary denial of Edwards' motion to vacate his 1977 convictions.
Edwards made two claims for relief below: first, that his plea of guilty to the charges of selling and possessing marijuana was involuntary in that the trial court failed to advise him at the plea proceeding of the possible collateral consequence of deportation[1]; and second, that the failure of his retained counsel to advise him of this consequence rendered his counsel ineffective. Either failure, said Edwards, entitled him to the vacation of his conviction and underlying plea.
We first hold that it is not the responsibility of the trial court to advise a defendant of federal deportation consequences at the time of taking a guilty plea, and the trial court's omission of this advice does not render the plea involuntary. Fruchtman v. Kenton, 531 F.2d 946 (9th Cir.1976); Michel v. United States, 507 F.2d 461 (2d Cir.1974). Deportation is a collateral consequence of a plea, Fruchtman v. Kenton, supra, and it is consistently held that courts are not required to advise pleading defendants of collateral consequences. Michel v. United States, supra; Tindall v. United States, 469 F.2d 92 (5th Cir.1972); Hutchison v. United States, 450 F.2d 930 (10th Cir.1971); Ladner v. Henderson, 438 F.2d 638 (5th Cir.1971).
But labelling the consequence as collateral does not diminish its significance. Indeed, the penalty of deportation has been recognized as often far more extreme than the direct consequences which may flow from a plea of guilty to an offense. Deportation has been said to be "the equivalent of banishment," Fong Haw Tan v. Phelan, 333 U.S. 6, 68 S.Ct. 374, 92 L.Ed. 433 (1947); "a savage penalty," "a life sentence of exile," Jordan v. DeGeorge, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886 (1951) (Jackson, J., dissenting); an event that results in "loss of property or life; or of all that makes life worthwhile," Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed.2d 938 (1922). Because of "the grave nature of deportation," the vagueness doctrine, against which the constitutionality of criminal statutes is tested, has been applied to deportation statutes. Jordan v. DeGeorge, supra. Thus, the consequence of deportation, collateral or not, can be matched in severity only by the prison sentence meted out.[2] Our decision *599 today is limited to the unique collateral consequence of deportation.
It is a lawyer's duty to ascertain that his client's plea of guilty is entered voluntarily and knowingly, that is, upon advice which enables the accused to make an informed, intelligent, and conscious choice to plead guilty or not. Edwards v. Estelle, 541 F.2d 1162 (5th Cir.), cert. denied, 430 U.S. 973, 97 S.Ct. 1662, 52 L.Ed.2d 367 (1976); Herring v. Estelle, 491 F.2d 125 (5th Cir.1974). A waiver of constitutional rights to be acceptable must be made with sufficient awareness of the relevant circumstances and likely results. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Ignorance of the potential consequences of deportation cannot, in our view, make for an intelligent waiver. See United States v. Shapiro, 222 F.2d 836 (7th Cir.1955) (where defendant entered a plea of guilty under the belief that he was a United States citizen and not subject to deportation, conviction would be set aside to prevent manifest injustice); People v. Giron, 11 Cal.3d 793, 114 Cal. Rptr. 596, 523 P.2d 636 (1974) (defendant's lack of awareness of deportation consequences constituted good cause for vacating a plea); People v. Wiedersperg, 44 Cal. App.3d 550, 118 Cal. Rptr. 755 (1st Ct.App. 1975) (where defendant was not apprised of deportation consequences, petition to set aside conviction on that ground stated a claim for relief). See also United States v. Briscoe, 432 F.2d 1351 (D.C. Cir.1970) ("Under appropriate circumstances the fact that a defendant has been misled as to consequences of deportability may render his guilty plea subject to attack ..."). While we may not impose upon the trial court the obligation to advise the accused of this consequence because "collateral," its "collateralness" is immaterial in measuring the effective assistance of counsel.
"Defense counsel is in a much better position to ascertain the personal circumstances of his client so as to determine what indirect consequences the guilty plea may trigger. Rule 11,[3] in our view, was not intended to relieve counsel of his responsibilities to his client." Michel v. United States, supra, 507 F.2d at 466.
The dissent sees some inconsistency in our holding on the one hand that the trial court's failure to advise the defendant of possible deportation consequences does not render the plea involuntary, and on the other hand that counsel's failure may. We do not see that placing the burden of advising the defendant on that person in the system most familiar with the background and status of the defendant, and the possibility or not of deportation, makes for inconsistency. Compare, e.g., Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (holding that the trial court is under no duty to inquire concerning conflicts in representation, notwithstanding that such conflicts might give rise to a claim of ineffective assistance of counsel). Even as Federal Rule of Criminal Procedure 11 was not intended to relieve counsel of his responsibilities to his client, Michel v. United States, supra, Florida Rule of Criminal Procedure 3.172 provides no immunity to counsel for his derelictions. Cf. Hall v. State, 316 So.2d 279 (Fla. 1975) (holding that counsel are ethically bound to see that proper procedural steps are followed in accepting a guilty plea).
This brings us to the dissenter's comment that it must be obvious to any alien defendant that deportation is a possible consequence, and therefore, advice to that effect is, as a matter of law, unnecessary. We think it could as well be said that it must be obvious to every American citizen that he has a right to plead not guilty and maintain his innocence, that he has a right to trial by jury, a right to confront witnesses against him  and yet our rules require, see, e.g., Florida Rule of Criminal Procedure 3.172, that these and other equally fundamental rights be diligently explained to every defendant before a plea of guilty waiving such rights is accepted. We *600 simply do not indulge assumptions that even the most basic rights are known or understood, see, e.g., Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ("We will not pause to inquire in individual cases whether the defendant was aware of his rights, without a warning being given"); Montoya v. United States, 392 F.2d 731 (5th Cir.1968) ("No amount of circumstantial evidence that the person may have been aware [of his rights] will suffice [in lieu of a warning]."), and we see no reason to indulge one in the present context. If upon remand it be shown that Edwards knew of the possible deportation consequence without advice, then so be it. We should not, however, assume the obviousness of this fact.
Thus, to the extent that the trial court summarily denied Edwards' motion on the basis that the consequence of deportation could not, as a matter of law, affect the voluntariness of Edwards' plea, or that such consequence was one which he is presumed to know, or that the failure to advise of this consequence could not give rise to a claim of ineffective counsel, the trial court was in error.
Lastly, since the trial court may have based its summary denial on the proposition that Edwards had no legal right to attack the competence of retained counsel, see, e.g., Cappetta v. Wainwright, 203 So.2d 609 (Fla. 1967), we point out that the fact that Edwards' counsel was of his own choosing is no longer an impediment to relief.[4]Cuyler v. Sullivan, supra; Blatch v. State, 389 So.2d 669 (Fla. 3d DCA 1980); Spencer v. State, 389 So.2d 652 (Fla. 1st DCA 1980); Presley v. State, 388 So.2d 1385 (Fla.2d DCA 1980); Chambers v. State, 388 So.2d 1259 (Fla. 2d DCA 1980); State v. Dukes, 388 So.2d 651 (Fla. 2d DCA 1980).
Accordingly, we hold that Edwards' motion to vacate his conviction and set aside his plea of guilty, insofar as it attacked the ineffectiveness of his retained counsel for failure to advise Edwards of the consequences of deportation, stated a legal ground for relief upon which Edwards is entitled to an evidentiary hearing. At that hearing it will, of course, be incumbent upon Edwards to establish that he was not advised by his counsel and was otherwise unaware of the consequence of deportation; that had he known of this consequence, he would not have entered the plea of guilty; and that such a consequence will actually flow from the conviction. The ineffectiveness of Edwards' counsel is to be judged by the test announced in Meeks v. State, 382 So.2d 673 (Fla. 1980), that is, "whether counsel was reasonably likely to render reasonably effective counsel based on the totality of circumstances." 382 So.2d at 675. Notwithstanding that the Meeks test, only recently announced, is to be applied in the hearing to be hereafter held,[5] we make clear that the trial court is to decide whether counsel's performance would have been reasonably effective in 1977 when Edwards' plea was entered. See Blatch v. State, supra.
Reversed and remanded.
HUBBART, Chief Judge (dissenting).
I must respectfully dissent. I would affirm the order under review in all respects, as, in my view, the defendant Edwards' motion to vacate fails to state a valid *601 ground for collateral attack of his criminal conviction under Fla.R.Crim.P. 3.850.

A
At the outset, I entirely agree with the court that the failure of the trial court to advise the defendant concerning possible deportation consequences attendant upon a guilty plea does not render the defendant's guilty plea involuntary. As the court correctly holds, the trial court has no responsibility to so advise an alien defendant as a predicate to accepting an otherwise voluntary guilty plea because deportation consequences are entirely collateral to the entry of an otherwise voluntary guilty plea. Fla. R.Crim.P. 3.172(c); Michel v. United States, 507 F.2d 461 (2d Cir.1974). Neither the trial court nor any agency in this state is authorized to deport a defendant upon the entry of a guilty plea in our courts; only the federal government, through its agencies and courts, has such authority. Moreover, it is entirely discretionary with the federal government, as defense counsel herein concedes, as to whether any deportation proceedings will be brought against a given alien.
The practical effect of this holding, however, is canceled out by the court's second holding herein. If the trial court, as here, fails to advise an alien defendant of possible deportation consequences attendant upon a guilty plea, the court holds that the conviction is nonetheless subject to collateral attack if defense counsel does not advise the defendant concerning the collateral consequences of a possible deportation. I fail to understand how these two holdings can stand together with any degree of consistency. Indeed, trial judges, notwithstanding the court's technical holding to the contrary, would be well-advised by today's decision to include in their standard guilty plea colloquy an inquiry as to whether the defendant is an alien, and if so, whether he has discussed with his counsel possible deportation consequences which may flow from the guilty plea. Failure to do so runs the risk that the conviction based on an otherwise voluntary guilty plea may be subject to collateral attack based on an ineffective assistance of counsel claim. I cannot agree with this result.
Admittedly, deportation consequences which may flow from the entry of a guilty plea are serious in nature, but then so are other collateral consequences attendant upon a guilty plea, such as loss of present employment, loss of a vast array of future employment opportunities, and loss of a host of civil rights. Actual knowledge of these collateral consequences by a defendant is simply not a prerequisite to the entry of an otherwise voluntary guilty plea. See Fla.R.Crim.P. 3.172(c). I fail, therefore, to understand why defense counsel is constitutionally compelled to advise the defendant as to any such collateral consequences, be it deportation or otherwise, when the defendant's knowledge thereof cannot, in any event, affect the voluntariness of the guilty plea. It may be good lawyering, as the court suggests, for counsel to review such collateral consequences with his client, but not all preferred practice techniques rise to the level of a constitutional mandate. The defendant is only entitled to effective, not flawless assistance of counsel under our constitution. Meeks v. State, 382 So.2d 673, 675-76 (Fla. 1980).
Moreover, it seems clear to me as a matter of common sense that a visitor in this country must be held to understand that he may be deported from the country if he commits a crime here. Surely, any reasonable person who is here by our sufferance understands this and cannot be heard to complain, as the defendant herein does, that he was ignorant of this simple truth. We follow the same rule of presumed knowledge as to all other collateral consequences attendant upon a guilty plea, and I frankly see no basis for invoking a special exception as to deportation consequences. The fact remains that an alien defendant may enter a voluntary guilty plea with effective assistance of counsel without advice by court or counsel concerning any collateral consequences which may be attendant upon the plea. United States v. Parrino, 212 F.2d 919 (2d Cir.), cert. denied, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954).

*602 B
Beyond that, I cannot agree that this defendant can be heard to attack the competency of his privately retained counsel, even if he had a valid complaint, as the court herein allows him to do. Such a holding is contrary to a long line of Florida decisions which have held that a criminal defendant is precluded from attacking the competency of his privately retained counsel as a ground for collateral attack of his criminal conviction under Fla.R.Crim.P. 3.850. Douglas v. State, 373 So.2d 895, 896 (Fla. 1979); Cappetta v. Wainwright, 203 So. 609, 610 n. 5 (Fla. 1967), citing with approval, Everett v. State, 161 So.2d 714 (Fla. 3d DCA 1964); State v. Garmise, 382 So.2d 769, 772 (Fla. 3d DCA 1980); Farmer v. State, 366 So.2d 1271 (Fla. 4th DCA), cert. denied, 378 So.2d 344 (Fla. 1979); O'Quinn v. State, 364 So.2d 775 (Fla.1st DCA 1978), cert. denied, 373 So.2d 460 (Fla. 1979); Capo v. State, 363 So.2d 410 (Fla.1st DCA 1978); Crespo v. State, 339 So.2d 697 (Fla.3d DCA 1976); Suarez v. State, 338 So.2d 546 (Fla. 3d DCA 1976); Belsky v. State, 231 So.2d 256 (Fla.3d DCA 1970); Brown v. State, 223 So.2d 337 (Fla.3d DCA), cert. denied, 229 So.2d 866 (Fla. 1969), cert. denied, 397 U.S. 969, 90 S.Ct. 1009, 25 L.Ed.2d 262 (1970); Frizzell v. State, 213 So.2d 293 (Fla. 2d DCA 1968); Ford v. State, 210 So.2d 33 (Fla. 2d DCA 1968); Simpson v. State, 164 So.2d 224, 226 (Fla. 3d DCA), appeal dismissed, 169 So.2d 383 (Fla. 1964). Until overruled by the Florida Supreme Court, I am not disposed to walk away from all these decisions as we do in this case. To the extent that Blatch v. State, 389 So.2d 669 (Fla. 3d DCA 1980); Spencer v. State, 389 So.2d 652 (Fla. 1st DCA 1980); Chambers v. State, 388 So.2d 1259 (Fla.2d DCA 1980), reach a contrary conclusion, I would recede from Blatch and decline to follow Spencer and Chambers.

1
I am frank to acknowledge that Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), puts in doubt the continued validity of the above line of Florida decisions. Without question, the sweeping language of the Cuyler opinion appears to end all distinctions between court-appointed and privately retained counsel when the defendant seeks to collaterally attack his criminal conviction on the ground of ineffective assistance of counsel. Still, this language may very well be dicta as the issue involved and necessarily decided by the Court was a much narrower one. Indeed, the Court itself in Cuyler framed the issue before it in these restricted terms:
"The question in this case is whether a state prisoner may obtain a federal writ of habeas corpus by showing that his retained defense counsel represented potentially conflicting interests." Cuyler v. Sullivan, 446 U.S. at 337, 100 S.Ct. at 1712, 64 L.Ed.2d at 339.
The Court ultimately answered the question in the affirmative, finding in this context the necessary degree of state action to render the defendant's trial fundamentally unfair under the Fourteenth Amendment. This result is the narrow holding of the Cuyler decision, K. Llewellyn, The Bramble Bush 66-68 (1930), which has no application to this case.
The narrow holding of Cuyler, however, does alter the above line of Florida cases to permit a criminal defendant to collaterally attack his criminal conviction upon a showing, unlike this case, that his retained counsel represented potentially conflicting interests. To accept the court's broad construction of Cuyler, on the other hand, requires us to overrule an entire line of Florida decisions, including two Florida Supreme Court decisions, and under the circumstances I am not inclined to do so. It is my view that where a district court has an option to give a reasonable, but narrow construction to an applicable United States Supreme Court decision, which will alter a Florida Supreme Court decision but not overrule it, as a broad construction would do, the district court should give the narrow rather than the broad construction to the said United States Supreme Court decision. This result, it seems to me, is more consonant with our dual constitutional responsibility to adhere to Florida Supreme Court decisions, Hoffman v. Jones, 280 So.2d 431 *603 (Fla. 1973), while at the same time applying the United States Constitution as the supreme law of the land. U.S.Const. Art. VI, cl. 2.

2
I am equally frank to acknowledge that the above narrow, but reasonable construction of Cuyler is to some extent influenced by my apprehension as to where an expansive reading of Cuyler will ultimately lead us. In this connection, I share many of the concerns expressed by Judge Ott of the Second District Court of Appeal as to the wisdom of a wide open rule which allows a criminal defendant, as here, to collaterally attack his criminal conviction on the ground that his privately retained counsel was ineffective. State v. Dukes, 388 So.2d 651 (Fla. 2d DCA 1980) (Ott, J., concurring). Rather than rush to judgment to dismantle, rather than alter, 16 years of unbroken Florida decisions  including two Florida Supreme court decisions  in favor of a rule of dubious value based on a United States Supreme Court decision in which reasonable people may differ as to its holding, I think it best to pause and let the Florida Supreme Court do the dismantling, if that be deemed appropriate, rather than this court.
I would affirm.
NOTES
[1] Edwards is a citizen of Jamaica and, therefore, an alien. Any alien in the United States who has been convicted of a violation of any law or regulation relating to the illicit possession of or traffic in marijuana shall, upon order of the Attorney General, be deported. 8 U.S.C. § 1251(a)(11) (1956). This statute applies to a state court conviction where the alien is placed on probation, as was Edwards. Gonzalez de Lara v. United States, 439 F.2d 1316 (5th Cir.1971).
[2] In the present case, deportation far outweighs the probation received by Edwards. The consequence of deportation is exacerbated by the fact that Edwards, according to the record before us, is married to an American citizen.
[3] Fed.R.Crim.P. 11. Its counterpart is Florida Rule of Criminal Procedure 3.172.
[4] Judge Hubbart's dissent is, in our view, a far too restrictive reading of Cuyler v. Sullivan. Moreover, as was implicit in Blatch, we do not see that Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), was intended to prevent us from following a decision of the United States Supreme Court, which, in good conscience, we believe nullifies a decision of the Florida Supreme Court. We would add that Witt v. State, 387 So.2d 922 (Fla. 1980), appears to relieve District Courts of the perceived bonds of Hoffman v. Jones, supra, in a matter such as this. Hoffman held that a District Court does not have the authority to overrule a decision of the Supreme Court. Witt, in the context of a Rule 3.850 case, held that a change of law emanating from the United States Supreme Court, constitutional in nature and of fundamental significance, could be considered and acted upon by the lower Florida courts. Cuyler v. Sullivan represents such a change.
[5] In Meeks, the new standard was made applicable to Meeks himself, who was attacking a 1975 conviction.