364 So.2d 775 (1978)
William T. O'QUINN, Appellant,
v.
STATE of Florida, Appellee.
No. BB-41.
District Court of Appeal of Florida, First District.
November 3, 1978.
Rehearing Denied December 15, 1978.
David A. Demers, St. Petersburg, and Judith Benninger Brown, for appellant.
Robert L. Shevin, Atty. Gen., Jeanne Daws Schwartz, Asst. Atty. Gen., for appellee.
MILLS, Acting Chief Judge.
On 11 January 1974, O'Quinn was indicted by a grand jury for the premeditated murder of his wife. On 14 March 1974, O'Quinn withdrew his previously entered plea of not guilty, pled guilty to first degree murder, and was sentenced to life imprisonment. On 24 December 1975, O'Quinn filed his motion to vacate judgment and sentence and for leave to withdraw his plea of guilty. The trial judge, who had not presided at the change of plea proceedings, denied the motion without holding an evidentiary hearing and without benefit of the transcript of the change of plea proceedings. We vacated the trial court's order denying the motion and remanded the case to the trial court for further proceedings as required by Fla.R. Crim.P. 3.850. After an evidentiary hearing and upon consideration of the record in the case, including the change of plea transcript, the trial court again denied O'Quinn's motion.
O'Quinn contends that the judgment and sentence should be vacated because he was denied effective assistance of counsel and because his guilty plea was not entered knowingly and voluntarily.
*776 O'Quinn had privately retained counsel. Florida courts have long held that one may not attack the competency of his privately retained counsel. Cappetta v. Wainwright, 203 So.2d 609 (Fla. 1967); Belsky v. State, 231 So.2d 256 (Fla. 3d DCA 1970); State v. Pinto, 273 So.2d 408 (Fla. 3d DCA 1973).
The record and evidence taken at the hearing do not support O'Quinn's contention that the guilty plea was not entered knowingly and voluntarily. O'Quinn had taken the drugs Librium and Darvon on the morning of the change of plea proceedings, however, he testified that he had been taking those drugs since 1971. His prescriptions called for ten milligrams (one capsule) of Librium three times a day and one capsule of Darvon-65 every four hours, as needed for pain. His doctor testified that a ten miligram dose of Librium would have no significant impact on the mental faculties of an individual even if they had an abnormal reaction to Librium and O'Quinn did not have an abnormal reaction to Librium. O'Quinn testified, however, that on the morning of the change of plea he was given a double dose of Librium and Darvon. The doctor was asked whether a double dose of those drugs would have any impact on a person who was in a depressed state. The doctor replied that if the individual was already depressed the Librium would increase the depression and that normally there would be no impact from the Darvon. The doctor further testified that if an individual took enough Librium and Darvon to impair his comprehension, he would probably show some signs of incoordination or drowsiness and some slurring of speech. O'Quinn did not exhibit these symptoms at the change of plea proceedings. Further, the change of plea transcript indicates that O'Quinn fully understood what his plea meant and its consequences.
At the evidentiary hearing O'Quinn testified that he pled guilty because his attorney led him to believe that if he did so he would receive a sentence of only nine to twelve months. However, on the negotiated plea form executed before the court by O'Quinn, the blank for recommended sentence was filled in with "life imprisonment". The following exchange with the sentencing judge also indicates that O'Quinn clearly understood what his sentence would be:
"THE COURT: And has there been any promise made to you of any lesser punishment 
THE DEFENDANT: No, sir.
THE COURT:  if you pled?
THE DEFENDANT: No, sir. He just told me what could happen to me. I have read the articles or papers. I imagine that you are reading the same things. I have read those.
THE COURT: Do you realize that if 
THE DEFENDANT: Do at least 25 years?
THE COURT: Do you realize that you are facing a 25  a life sentence?
THE DEFENDANT: Yes, sir.
THE COURT: 25 years?
THE DEFENDANT: Yes, sir."
We further find that there is sufficient evidence to refute O'Quinn's contention that he was not informed of certain possible defenses. O'Quinn's attorney testified that he advised O'Quinn of the possibility of a provocation defense although, in his judgment, the provocation had occurred at times too remote to be used as a defense. At the change of plea proceedings the court asked O'Quinn's attorney whether possible defenses had been discussed. O'Quinn's attorney replied that they had, stating:
"... I explained to him that under the law if we can prove total and complete intoxication, it would reduce the plea or the penalty for first degree to second degree. However, I have conferred with the doctors, and this man's physical health, perhaps he would not live through a hard jury trial. It's very taxing to the person, and in his physical condition, and I have asked him about it, and he confirmed and agrees with me that we should enter this plea today."
O'Quinn contends that he was not adequately informed of all possible defenses because his attorney did not tell him that he could be acquitted due to his intoxication. *777 While Florida law recognizes insanity super-induced by the use of intoxicants as a complete defense, voluntary intoxication is not a complete defense. Cirack v. State, 201 So.2d 706 (Fla. 1967). Prior to the entry of the guilty plea, the court-appointed psychiatrist had opined that at the time of the offense O'Quinn "... was mentally competent, able to understand the nature, quality and wrongfulness of his acts."
The order of the trial court is affirmed.
SMITH and ERVIN, JJ., concur.