398 So.2d 448 (1981)
Richard VAGNER, Petitioner,
v.
Louie L. WAINWRIGHT, Respondent.
No. 56201.
Supreme Court of Florida.
May 7, 1981.
*449 Murray M. Wadsworth and William H. Davis of Wadsworth & Davis, Tallahassee, for petitioner.
Jim Smith, Atty. Gen., and Benedict P. Kuehne, Asst. Atty. Gen., West Palm Beach, for respondent.
BOYD, Justice.
This cause is before the Court on petition of a state prisoner for writ of habeas corpus. We have jurisdiction. Art. V, § 3(b)(6), Fla. Const.
Petitioner Richard Vagner was convicted of aggravated assault, aggravated battery, and two counts of kidnapping. He was sentenced to four three-year prison terms, to be served concurrently. Vagner sought a writ of habeas corpus from the United States District Court for the Middle District of Florida, claiming that his privately retained attorney rendered ineffective legal assistance at trial. The court granted respondent's motion to dismiss for failure to exhaust state remedies, reasoning that, "No recent decisions of the Florida Supreme Court ... indicate that that Court would be unwilling to reconsider the question of ineffective assistance of privately retained counsel in light of the recently established federal law on the question." Vagner v. Wainwright, 473 F. Supp. 436, 439 (M.D.Fla. 1979).
Petitioner took an appeal of that decision to the Fifth Circuit Court of Appeals. Meanwhile, he filed the instant petition in this Court. We initially denied the petition on February 26, 1979. While our decision was pending on rehearing, the United States Court of Appeals remanded the federal cause to the district court for consideration of the merits. Vagner v. Wainwright, 597 F.2d 770 (5th Cir.1979) (unpublished opinion).
On July 16, 1979, this Court appointed counsel for petitioner and set the case for oral argument on the merits of the petition on rehearing. In accordance with our decision to reconsider the merits of Vagner's claim, the Fifth Circuit withdrew its prior order and affirmed the federal district court's dismissal for failure to exhaust state remedies. Vagner v. Wainwright, 599 F.2d 1053 (5th Cir.1979) (unpublished opinion).
Petitioner asserts that his lawyer at trial rendered inadequate representation. In support of this argument he points to a number of specific instances of inaction on the part of the lawyer. Petitioner was represented by privately retained counsel of his own selection. Before we reach the question of whether petitioner was denied the effective assistance of counsel and, if so, decide what relief he is entitled to, we must dispose of a preliminary question: whether the ineffectiveness or incompetence of privately retained counsel constitutes a basis for challenging a conviction in the courts of Florida.
The respondent agrees with petitioner that we should answer this threshold question in the affirmative. Respondent, in its efforts to have the federal habeas corpus action dismissed for failure to exhaust state remedies, argued that this Court would be willing to consider ineffectiveness of retained counsel as a ground for collateral attack on the judgment of conviction. In accordance with its position taken there, the respondent moved for rehearing of this cause and urges that we recede from Cappetta v. Wainwright, 203 So.2d 609 (Fla. 1967). In Cappetta, the Court said, "It has been held ... that one may not contest the competency of privately retained counsel." Id. at 610.
This statement from Cappetta has been the basis for numerous decisions of the district courts of appeal declining to consider *450 the issue of competence of retained counsel in appeals from denials of post-conviction relief. Farmer v. State, 366 So.2d 1271 (Fla. 4th DCA), cert. denied, 378 So.2d 344 (Fla. 1979); O'Quinn v. State, 364 So.2d 775 (Fla. 1st DCA 1978), cert. denied, 373 So.2d 460 (Fla. 1979); Crespo v. State, 339 So.2d 697 (Fla. 3d DCA 1976); Staples v. State, 298 So.2d 545 (Fla. 2d DCA 1974); State v. Pinto, 273 So.2d 408 (Fla. 3d DCA), cert. dismissed, 283 So.2d 367 (Fla. 1973); Humphries v. State, 232 So.2d 23 (Fla. 1st DCA), cert. denied, 237 So.2d 752 (Fla. 1970); Belsky v. State, 231 So.2d 256 (Fla. 3d DCA 1970); Brown v. State, 223 So.2d 337 (Fla. 3d DCA), cert. denied, 229 So.2d 866 (Fla. 1969), cert. denied, 397 U.S. 969, 90 S.Ct. 1009, 25 L.Ed.2d 262 (1970); Byrd v. State, 220 So.2d 14 (Fla. 3d DCA 1969); Frizzell v. State, 213 So.2d 293 (Fla. 2d DCA 1968); Ford v. State, 210 So.2d 33 (Fla. 2d DCA 1968). The rule has also been applied when the issue of incompetence of retained counsel was raised on appeal of the judgment of conviction. Dickenson v. State, 261 So.2d 561 (Fla. 3d DCA 1972). The Court in Cappetta did not discuss the rationale for the rule there embraced; the holding derives from a number of pre-Cappetta decisions. Williams v. State, 177 So.2d 736 (Fla. 1st DCA 1965); Coyner v. State, 177 So.2d 715 (Fla. 3d DCA 1965); Todd v. State, 176 So.2d 344 (Fla. 2d DCA 1965); Amaral v. State, 171 So.2d 549 (Fla. 3d DCA 1965); Simpson v. State, 164 So.2d 224 (Fla. 3d DCA 1964); Everett v. State, 161 So.2d 714 (Fla. 3d DCA 1964).
In Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the United States Supreme Court held that in a state prosecution involving the possibility of imposition of a penalty of death, the due process clause of the fourteenth amendment requires the provision of effective, as opposed to merely formal, representation by legal counsel. In Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the Court held that the sixth amendment provides the accused in federal prosecutions a right to the effective assistance of counsel. In Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Court held that the sixth amendment right to counsel was incorporated into the due process clause and would apply to the states in all felony prosecutions. In Benton v. Maryland, 395 U.S. 784, 795, 89 S.Ct. 2056, 2063, 23 L.Ed.2d 707 (1969), the Court said, "Once it is decided that a particular Bill of Rights guarantee is `fundamental to the American scheme of justice,' ... the same constitutional standards apply against both the State and Federal Governments."
Thus it is clear that the accused in a state prosecution is entitled to the effective assistance of counsel. See McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In light of this established constitutional principle, the Cappetta doctrine cannot now be viewed as stating that there is no such right. Its continuing vitality as a source of authority for the denial of consideration of claims of ineffectiveness of retained counsel must rest upon some other ground.
One asserted ground for the rule is that "the defendant by retaining his own counsel has waived any right to attack the competency of his counsel as a ground for post-conviction relief." State v. Garmise, 382 So.2d 769, 771 (Fla. 3d DCA 1980), overruled, Blatch v. State, 389 So.2d 669 (Fla. 3d DCA 1980). This waiver rationale, however, breaks down when analyzed in light of the fact that persons accused of crime usually are not in a position to evaluate in advance the skills of lawyers available for their selection and retention. See United States v. Marshall, 488 F.2d 1169 (9th Cir.1973). Furthermore, the United States Supreme Court has held that a waiver of a fundamental right in the context of a criminal prosecution must be knowing and intelligent, judged by a strict standard. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1972). Judged by such a strict standard, it cannot be said that one who retains counsel of his own choosing has waived the right to effective assistance of counsel by doing so.
Other decisions applying the Cappetta doctrine suggest a different rationale for *451 the rule. When retained counsel is incompetent and thereby delivers ineffective advocacy, so the argument goes, there is no court ruling or decision, no state statute or procedural rule that can be said to have resulted in the denial of the right. There is no state complicity in the circumstances resulting in the denial. Where counsel is court-appointed and paid by the state, on the other hand, there is state involvement in any incompetence later exhibited.
This "state action" rationale was utilized by the United States Court of Appeals, Fifth Circuit, in Fitzgerald v. Estelle, 505 F.2d 1334 (5th Cir.1974), cert. denied, 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675 (1975). There the court fashioned a dichotomous test distinguishing retained from appointed counsel and distinguishing two standards of competence depending on whether the sixth amendment or the due process clause is said to have been violated. On the authority of Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), we reject any "state action" rationale for distinguishing claims of ineffectiveness of retained counsel from those relating to appointed counsel.
In Cuyler v. Sullivan, a state prisoner sought habeas corpus relief in federal district court on the ground that his sixth amendment rights were violated because his retained trial counsel had represented conflicting interests. In the course of deciding whether a state trial judge must inquire into the propriety of multiple representation in the absence of an objection and whether the mere possibility of a conflict of interest constitutes deprivation of the right to counsel, the Court considered the state's contention that the performance of retained defense counsel cannot provide the basis for relief because it does not involve state action.
"A state prisoner," the Court said, "can win a federal writ of habeas corpus only upon a showing that the state participated in the denial of a fundamental right protected by the Fourteenth Amendment." Id. 100 S.Ct. at 1715. The sixth amendment right to counsel is fundamental, but the prisoner's assertions of conflict of interest did not "allege that state officials knew or should have known that his lawyers had a conflict of interest. Thus, we must decide whether the failure of retained counsel to provide adequate representation can render a trial so fundamentally unfair as to violate the Fourteenth Amendment." Id. at 1715.
In answering this question, the Court discussed its past decisions which recognize that "a state criminal trial, a proceeding initiated and conducted by the State itself, is an action of the State within the meaning of the Fourteenth Amendment... . When a State obtains a criminal conviction through such a trial it is the State that unconstitutionally deprives the defendant of his liberty." Id. at 1715 (citations omitted). The sixth amendment right to counsel is abridged not only by failing to provide counsel to those who can afford none, but also by, for example, "court procedures that restrict a lawyer's tactical decision to put the defendant on the stand...." Id. at 1716. "Thus, the Sixth Amendment does more than require the States to appoint counsel for indigent defendants. The right to counsel prevents the States from conducting trials at which persons who face incarceration must defend themselves without adequate legal assistance." Id. at 1716.
Based on this analysis, the Court concluded:
A proper respect for the Sixth Amendment disarms petitioner's contention that defendants who retain their own lawyers are entitled to less protection than defendants for whom the State appoints counsel. We may assume with confidence that most counsel, whether retained or appointed, will protect the rights of an accused. But experience teaches that, in some cases, retained counsel will not provide adequate representation. The vital guarantee of the Sixth Amendment would stand for little if the often uninformed decision to retain a particular lawyer could reduce or forfeit the defendant's entitlement to constitutional protection. Since the State's conduct of a criminal trial itself implicates *452 the State in the defendant's conviction, we see no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers.
Id. at 1716 (footnotes omitted).
We hold, therefore, that claims of denial of the effective assistance of counsel based on inadequacy or incompetence of retained counsel are cognizable as grounds for challenging convictions on appeal and collaterally, to the same extent as are such claims pertaining to appointed counsel. We hold further that the same standard for evaluating such claims shall apply to cases of retained counsel as apply to cases of appointed counsel.
That standard, as this Court has said, "is not `sham and mockery,' but whether counsel was reasonably likely to render and did render reasonably effective counsel based on the totality of the circumstances." Meeks v. State, 382 So.2d 673 (Fla. 1980). This verbal expression of the standard has long been utilized by the Fifth Circuit Court of Appeals. E.g., Herring v. Estelle, 491 F.2d 125 (5th Cir.1974); Brown v. Beto, 377 F.2d 950 (5th Cir.1967); McKenna v. Ellis, 280 F.2d 592 (5th Cir.1960), cert. denied, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961).
In Knight v. State, 394 So.2d 997 (Fla. 1981), we set forth the four basic principles or standards which are to be used to determine whether a government-appointed attorney has provided reasonably effective assistance of counsel to his client. These standards were established and fully explained in United States v. DeCoster (DeCoster III), 199 App.D.C. 359, 624 F.2d 196 (D.C. Cir.1979) (en banc). These principles and standards now also apply to privately retained counsel and should be used to determine whether privately retained attorneys have provided reasonably effective counsel.
Accordingly, we discharge the writ without prejudice to petitioner's right to file a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.
It is so ordered.
ADKINS, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
SUNDBERG, C.J., concurs in result only.