415 So.2d 70 (1982)
William J. MEYER, Appellant,
v.
STATE of Florida, Appellee.
No. 82-211.
District Court of Appeal of Florida, Fifth District.
June 2, 1982.
James B. Gibson, Public Defender, James R. Wulchak, Chief, Appellate Division, Asst. Public Defender, and Michael S. Becker, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Richard W. Prospect, Asst. Atty. Gen., Daytona Beach, for appellee.

ON MOTION FOR REHEARING
ORFINGER, Judge.
On February 17, 1982, petitioner filed a petition for writ of habeas corpus to secure belated direct review of his criminal conviction. The petitioner alleged that on May 6, 1981, he had been convicted by a jury on one count of burglary of a structure and two counts of second degree grand theft. On May 7, 1981, he was sentenced, after which he alleges that he immediately requested his court appointed public defender to appeal the convictions and sentences. The petition further alleges that the public defender "negligently, though inadvertently, fail[ed] ... to timely file the notice of appeal ..." and other necessary pleadings, and thus through "state action ... [had] deprived petitioner of his right to a direct appeal."
Petitioner further alleged that under the authority of cases such as Baggett v. Wainwright, 229 So.2d 239 (Fla. 1969) and Hollingshead v. Wainwright, 194 So.2d 577 (Fla. 1967), he was thus entitled to belated direct review. We granted the petition. On motion for rehearing, the State asks that we reconsider our decision in the light of Polk *71 County v. Dodson, ___ U.S. ___, 102 S.Ct. 445, 72 L.Ed.2d 509 (1981).
Belated appellate review of criminal convictions in Florida appears to have its current origin in Hollingshead v. Wainwright, 194 So.2d 577 (Fla. 1967). An earlier petition writ of habeas corpus, denied without opinion, 177 So.2d 477, had been reversed by the United States Supreme Court[1] on the authority of Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, (1963). Complying with the mandate of the U.S. Supreme Court, and considering the report of a commissioner appointed to determine the truth of the factual allegations, our supreme court held that the denial by the trial court of the indigent defendant's request that counsel be appointed to represent him on appeal was a denial of due process under the Constitution of the United States such as to entitle the defendant to belated appellate review of his conviction.[2]
In Baggett v. Wainwright, 229 So.2d 239 (Fla. 1969), our supreme court made it clear that the right to the appointment of counsel for the purpose of appeal was measured against federal constitutional standards. In Baggett, the pro se petition for writ of habeas corpus alleged that petitioner had been convicted of certain felonies and although represented at trial by private counsel, he had made known to the trial judge his indigency and his desire to appeal his convictions; that the trial judge had advised him that counsel would be appointed to prosecute his appeal; that several months later he had communicated with the trial judge who advised him that his appeal was being handled by the public defender and that subsequent communication with the public defender revealed that his appeal had never been filed.
Noting that petitioner had sufficiently alleged facts which gave rise to a duty on the part of the State to afford him the necessary incidents of an appeal, including appointment of counsel, Id. at 241, the court held that additionally, it was necessary to determine that the deprivation of the necessary incidents of an appeal be attributable to state action, because of the requirement that state action be present to activate the due process clause of the Federal Constitution.
The court then held:
In most instances little difficulty is encountered in ascertaining whether there exists a failure or deprivation attributable to state action. Generally, in the present context, state action is shown when a responsible official in the State's system of justice fails to take proper steps toward affording the necessary incidents of an appeal, e.g., appointment of counsel for a convicted defendant, after the State's duty to act in this particular is activated by the defendant's compliance with the requirements set forth in the first test stated above. Applying this rule to the present case, one could not question the existence of state action if the established facts show the trial judge never responded to such test and appointed counsel to represent petitioner on appeal. The allegations in this case do not exclude the possibility of this factual finding.
If, however, it should be factually established in this case that the trial judge actually appointed counsel to represent petitioner on his appeal and that the failure to timely perfect and prosecute petitioner's appeal was due to the default or neglect of the court-appointed attorney, a difficult question is presented as to whether petitioner was deprived by State action of his right to appeal, or the necessary incidents thereto. The difficulty reposes in the contention that the requirements of equal protection do not operate to afford an indigent criminal appellant *72 any higher or greater rights than those available to a nonindigent. Since the risk of failure to timely perfect an appeal is one which might befall a nonindigent represented by private counsel, it is argued this type of default should not be attributed to the State in testing the application of the Fourteenth Amendment. We are not persuaded by this argument.
Id. at 242.
Although Baggett does not directly hold that the failure of court appointed counsel to properly perfect a requested appeal constitutes "state action", that case has been relied on for that theory,[3] and the Supreme Court thereafter made it clear that the failure of a court appointed attorney to file a timely appeal was "state action" as defined by Baggett, so as to entitle a defendant to belated appellate review of his conviction. Costello v. State, 246 So.2d 752 (Fla. 1971).
Polk County v. Dodson, is relied on by the State as support for the proposition that Hollingshead, Baggett and Costello are no longer effective to determine the federal constitutional question of "State action" as it applies to a due process violation. In Polk County, the court found the issue to be whether a public defender acts "under color of state law" when representing an indigent defendant in a criminal matter. Dodson, the defendant in the criminal proceeding, had filed an action for damages under 42 U.S.C. Sec. 1983 against Polk County, its Offender Advocate, its Board of Supervisors, and Shepard, an attorney in the Offender Advocate's Office, alleging that Shepard, who had been assigned to represent Dodson in an appeal of a criminal conviction to the Iowa Supreme Court, had failed to represent him adequately, since Shepard had moved to withdraw as counsel on the ground that Dodson's claims were legally frivolous. The Iowa Supreme Court had granted Shepard's motion and had dismissed Dodson's appeal. In the District Court, Dodson alleged that Shepard's actions, particularly her motion to withdraw, had deprived him of his right to counsel, subjected him to cruel and unusual punishment and denied him due process of law. He sought injunctive relief, as well as damages. To establish Shepard acted under color of State law, a jurisdictional requisite for a § 1983 action, Dodson relied on Shepard's employment by the county.[4] The district court dismissed the claims against all of the defendants, but the court of appeals reversed, (8th Cir.) 628 F.2d 1104. The United States Supreme Court held in pertinent part that a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to an indigent defendant in a state criminal proceeding and reinstated the district court's dismissal of the complaint.
The majority opinion by Justice Powell held:
In this case the Offender Advocate for Polk County assigned Martha Shepard to represent Russell Dodson in the appeal of his criminal conviction. This assignment entailed functions and obligations in no way dependent on state authority. From the moment of her appointment, Shepard became Dodson's lawyer, and Dodson became *73 Shepard's client. Except for the source of payment, their relationship became identical to that existing between any other lawyer and client. "Once a lawyer has undertaken the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serving in a legal aid or defender program." American Bar Association Standards for Criminal Justice, 4-3.9 (2d ed. 1980).
Id. 102 S.Ct. at 449.
The court further explained:
But a defense lawyer is not, and by the nature of his function cannot be, the servant of an administrative superior. Held to the same standards of competence and integrity as a private lawyer, see Moore v. United States, 432 F.2d 730 (CA3 1970), a public defender works under canons of professional responsibility that mandate his exercise of independent judgment on behalf of the client. "A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services." DR 5-107(B), ABA Code of Professional Responsibility (1977 ed.).
Second, and equally important, it is the constitutional obligation of the State to respect the professional independence of the public defenders whom it engages. This court's decision in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), established the right of State criminal defendants to the "guiding hand of counsel at every step in the proceedings against [them]." Id., at 345, 83 S.Ct., at 797, quoting Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). Implicit in the concept of a "guiding hand" is the assumption that counsel will be free of State control. There can be no fair trial unless the accused receives the services of an effective and independent advocate. See, e.g., Gideon v. Wainwright, supra; Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). At least in the absence of pleading and proof to the contrary, we therefore cannot assume that Polk County, having employed public defenders to satisfy the State's obligations under Gideon v. Wainwright, has attempted to control their action in a manner inconsistent with the principles on which Gideon rests.
Id. at 451-52.
Neither Baggett nor Costello explained the rationale for the holding that "state action" was involved in the failure of a public defender to file a proper and timely appeal. Perhaps the basis for the holding is the public nature of the office of the Public Defender. Polk County raises some doubts as to the continued efficacy of that rationale, at least where federal constitutional standards are applied.
"Within the context of our legal system, the duties of a defense lawyer are those of a personal counselor and advocate. It is often said that lawyers are "officers of the court." But the courts of appeals are agreed that a lawyer representing a client is not, by virtue of being an officer of the court, a state actor "under color of state law" within the meaning of § 1983. In our system a defense lawyer characteristically opposes the designated representatives of the State. The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness. But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing `the undivided interests of his client.' This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed."
102 S.Ct. at 450.
A defense lawyer is an adversary of the State, and he is no less an adversary because the State pays him. Florida has adopted the same rule of professional conduct alluded to in Polk County:
"A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or *74 regulate his professional judgment in rendering such legal services."
Fla. Bar Code of Prof. Resp. DR 5-107(B). Under the rationale of Polk County, if a public defender representing his client does not operate under color of state law, it is difficult to perceive that "state action" is involved in his representation (or misrepresentation) of that client.
The same principles which require the State to provide an indigent defendant with independent counsel also require that he be provided with effective representation. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The former distinction between the results of ineffective assistance of publicly appointed counsel and privately retained counsel have been eliminated. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); Vagner v. Wainwright, 398 So.2d 448 (Fla. 1981). Now, the ineffective assistance of either publicly appointed or privately retained counsel is ground for collateral relief. Cuyler; Vagner. The State posits that these holdings necessarily require that the theory of belated appellate review be extended to defendants represented by private counsel, since privately represented and publicly represented defendants are entitled to equally effective representation. If indeed, the shadow of "state action" dogs the footsteps of every action (or inaction) of a public defender, there appears to be a basis for the State's concern, at least in the possibility that an extension of the Baggett rule to all defendants effectively does away with any time limits for filing appeals from criminal convictions, while refusal to extend that privilege to privately represented defendants would appear to raise serious equal protection problems. We confess that Polk County appears to knock the props from under the "state action" theory in the context here.
We are constrained, however, to follow Hollingshead, Baggett and Costello, under the dictates of Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), so the petition for rehearing is denied. However, because of the public importance of the question and because of the need to establish uniform procedures for appeal applying to all criminal defendants on a non-discriminatory basis, we will certify questions to the Supreme Court at the conclusion of this opinion.
We would be derelict in our duty if we did not comment on what we perceive to be a serious violation of professional ethics arising out of the "belated review" cases, where the neglect is that of an attorney, whether he be publicly appointed or privately retained. This court is concerned about the growing number of habeas corpus petitions for belated review being filed here. While we have recognized that under the cited cases the defendant is entitled to belated review where a proper showing is made, we believe that our inquiry can no longer stop there. These petitions, generally filed by members of the public defender's staff, but also filed by court appointed private counsel, merely allege that the attorney has failed, through neglect, to take the proper steps to perfect an appeal, thus "state action" has deprived the defendant of his right to appeal. While apologizing to the court for the neglect, no attempt is made to justify or excuse that neglect, and it is apparent that a "form" pleading is being used in these cases.
The ethical obligation of an attorney requires diligent attention to the legal problems of his client. No lawyer can ethically neglect a legal matter entrusted to him, nor handle it incompetently, Fla. Bar Code of Prof. Resp., DR 6-101, DR 7-101(A), and he should be sanctioned when he does. The fact that the courts have extricated the client from the consequences of the lawyer's neglect to timely file an appeal does not convert the neglect of a legal duty to something less. We therefore believe that we must comply with our own ethical obligations to sanction lawyers who neglect their legal and professional duty. We have already notified the public defenders in this district that any such neglect of duty will give rise to sanctions by this court where the neglect is the failure to comply with a directive of this court, thus resulting in a dismissal of the appeal, or where we deem *75 it appropriate, we will forward copies of the petition to the proper grievance committee of The Florida Bar for whatever action is deemed warranted by that committee under the circumstances of each case. We cannot condone admitted violations of the Code of Professional Responsibility nor will we do so, and we take this means to notify the lawyers who appear before this court of our intentions.
We hereby certify to the Supreme Court of Florida the following questions which we deem of great public importance:
A. IN THE LIGHT OF THE DECISION IN POLK COUNTY v. DODSON, ___ U.S. ___, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), IS STATE ACTION INVOLVED IN THE FAILURE OF A PUBLICLY APPOINTED LAWYER TO FILE A TIMELY NOTICE OF APPEAL ON BEHALF OF THE CONVICTED DEFENDANT, SO AS TO ENTITLE THE DEFENDANT TO BELATED APPELLATE REVIEW BY PETITION FOR HABEAS CORPUS?
B. IN THE LIGHT OF THE DECISION IN POLK COUNTY v. DODSON, ___ U.S. ___, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), IS STATE ACTION INVOLVED IN THE FAILURE OF A PRIVATELY RETAINED LAWYER TO FILE A TIMELY NOTICE OF APPEAL ON BEHALF OF THE CONVICTED DEFENDANT, SO AS TO ENTITLE THE DEFENDANT TO BELATED APPELLATE REVIEW BY PETITION FOR HABEAS CORPUS?
The petition for rehearing is DENIED. QUESTIONS CERTIFIED.
DAUKSCH, C.J., and COBB, J., concur.
NOTES
[1] Hollingshead v. Wainwright, 384 U.S. 31, 86 S.Ct. 1284, 16 L.Ed.2d 333 (1966).
[2] This was apparently a more acceptable procedure than outright dismissal of the charges. Prior to Hollingshead, the frustration of the right to appeal by a state functionary resulted in dismissal of the charges when a petition for writ of habeas corpus was granted. Hooper v. Wainwright, 168 So.2d 769 (Fla. 2d DCA 1964), complying with State ex rel. Ervin v. Smith, 160 So.2d 518 (Fla. 1964).
[3] The District Courts of Appeal have routinely granted such habeas corpus relief where the facts readily show entitlement thereto. See, e.g., Daniel v. Wainwright, 237 So.2d 832 (Fla. 2d DCA 1970); State ex rel Arnold v. State, 233 So.2d 173 (Fla. 3d DCA 1970). Other cases have recognized the right, although denying the petition for relief based on the particular facts of the case. See, e.g., Johnson v. State, 390 So.2d 1234 (Fla. 5th DCA 1980); Willis v. Wainwright, 375 So.2d 3 (Fla. 4th DCA 1979); see also Pressley v. Wainwright, 367 So.2d 222 (Fla. 1979) (England, J., dissenting); cf. Mercer v. Wainwright, 376 So.2d 377 (Fla. 1979) (Adkins, J., dissenting).
[4] "In both Burton [v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45] and Moose Lodge [v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 31 L.Ed.2d 627], the question was whether `State action' was present. In this case, the question is whether a public defender  who is concededly an employee of the county  acted `under color of state law' in her representation of Russell Dodson. Although this court has sometimes treated the questions as if they were identical, ... we need not consider their relationship in order to decide this case." 102 S.Ct. 445 at 451, n. 12.